THE CITY OF ROCHESTER, Respondent, *v.* WILLIAM I. QUINTARD, Appellant.

Under the provision of the State Constitution (§ 11, art. 8) limiting the amount of indebtedness which may be incurred by a city having a population of over 100,000, excepting the issue of bonds for a water supply, and providing that, in case of such an issue, the bonds shall be issued for a term not exceeding twenty years, a city of the class specified is not prohibited from issuing water bonds for a term greater than twenty years, providing the amount of the bonds issued, together with the then existing city indebtedness, does not exceed the prescribed limit, and an act authorizing such an issue is not violative of said constitutional provision.

Accordingly *held*, that the act of 1892 (Chap. 358, Laws of 1892), authorizing the city of Rochester to issue bonds to improve and extend its water supply to an amount not exceeding a sum specified, payable in not more than fifty years, was not in conflict with said constitutional provision, it appearing that the existing city indebtedness, together with the bonded debt so authorized, did not exceed the constitutional limit; and so, that bonds issued under said act, payable in fifty years, were valid.

Reported below, 65 Hun, 460.

(Submitted November 29, 1892; decided December 13, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of October, 1892, which directed a judgment in favor of plaintiff upon a case submitted under the Code of Civil Procedure (§ 1279).

The question presented was as to the validity of an issue of water bonds by the city of Rochester, as authorized by the act chapter 358, Laws of 1892.

The facts, so far as material, are stated in the opinion.

*Clark & Sedgwick* for appellant. The city of Rochester, having a population in excess of 100,000, has no power to issue water bonds having more than twenty years to run. (Const. N. Y. §§ 7, 11; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Bank* v. *Grace*, 102 id. 318.) All the various amendments and the remaining section of the original Constitution must be

taken together as forming a whole, and from these must be deduced the intent of the people, which must govern. (*Newell* v. *People*, 7 N. Y. 97; Const. N. Y. art. 8, §§ 10, 11 ; *G. E. R. R. Co.* v. *Anderson*, 109 N. Y. 564; *Sweet* v. *City of Syracuse*, 129 id. 316.) The clause immediately succeeding that relating to water bonds, by its terms, shows that the water bond prohibition clause is not limited to cities and counties of over 100,000 inhabitants, which have exceeded their ten per cent limitation. (Const. N. Y. art. 8, § 11.)

*C. D. Kiehel* for respondent. In the construction of this statute, the history attending its adoption must be taken in view, and will be a guide to the court. (Const. N. Y. art. 8, § 11; *Sweet* v. *City of Syracuse*, 129 N. Y. 328.) If, however, there is any doubt in the mind of the court as to the meaning of section 11, it must favor the act in question. (Cooley on Const. Lim. 88, 216 ; *Adams* v. *E. R. S. Bank*, 47 N. Y. S. R. 175 ; *People ex rel.* v. *Angle*, 109 N. Y. 567 ; *S. M. Ins. Co.* v. *City of New York*, 5 Sanf. 10 ; *Sweet* v. *City of Syracuse*, 129 N. Y. 329 ; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Ogden* v. *Saunders*, 12 Wheat. 213 ; *Newland* v. *Marsh*, 19 Ill. 384 ; *People* v. *Suprs.*, 17 N. Y. 241.) The intent of the Constitution prevails over the literal meaning, and the intent is ascertained from the general purpose of the whole section. (*People* v. *Fancher*, 50 N. Y. 291 ; *People ex rel.* v. *Potter*, 47 id. 375 ; *Newell* v. *People*, 7 id. 9, 97.) To hold that chapter 358 of the Laws of 1892 is unconstitutional and void would be to hold that the first part of the second paragraph of section 11, relating to the limitation of indebtedness, is nugatory. (Cooley on Const. Lim. 72, 219 ; *Adams* v. *E. R. S. Bank*, 47 N. Y. S. R. 178 ; *Clarke* v. *City of Rochester*, 24 Barb. 446 ; *Sweet* v. *City of Syracuse*, 129 N. Y. 329.)

FINCH, J. The question involved in this appeal is the proper construction of section 11 article 8 of the Constitution ; and arises upon the following state of facts. The city of

Rochester is shown to have had over one hundred thousand inhabitants at the date of the issue of the bonds the validity of which is questioned; and at the same date had an existing indebtedness which, together with the newly authorized bonded debt, did not exceed or even reach ten per-centum of the assessed valuation of the real estate of the city subject to taxation as it appeared by the rolls of the last preceding assessment for state or county taxes. The legislature passed an act (Chap. 358, Laws of 1892), authorizing the city to issue its bonds to an amount not exceeding $1,700,000 at a rate of interest not greater than four per-cent and payable in not more than fifty years, in order with the proceeds to improve and extend its water supply. The city issued a part of the authorized bonds and put them upon the market at public sale to the highest bidder. The defendant bought $300,000 of them at a small premium, but refused to accept and pay for them upon the ground that the city could not, under the constitutional restrictions, issue the bonds redeemable in fifty years, which was the term of credit stipulated, but was confined to an issue running but twenty years and accompanied by a sinking fund sufficient to extinguish the debt at its maturity: and that the act permitting the longer credit was unconstitutional and void. Formal tender of the bonds and demand of payment were waived, and the purchaser's refusal stands upon the constitutional objection alone. An agreed case was made upon which the General Term held the act to be constitutional and the bonds valid. The defendant thereupon brought this appeal.

The first paragraph of section eleven, the construction of which is disputed, has no immediate and direct bearing upon the inquiry. It forbids any gift or loan of the municipal money or credit, any ownership of corporate or associate bonds, and the creation of any indebtedness, except for county, city, town or village purposes, and except that lawful provision is permitted to be made for the support of the poor. An improvement of the water supply is a recognized city purpose, and a debt to accomplish that object is within the

exception of the first paragraph, and, so far as that is concerned, might be lawfully contracted to any needed amount and upon any term of credit deemed advisable. The section then proceeds to put a further restraint upon a certain class of counties and cities in the contracting of debts even for the permitted county and city purposes. It forbids such indebtedness beyond the amount of ten per centum of the last assessment valuation of real estate for state or county taxes, and makes void all indebtedness incurred in the future beyond that aggregate except as thereinafter provided. There are thus two limitations to the restraint founded upon the amount of existing indebtedness. It applies only to cities having one hundred thousand or more inhabitants or counties containing such a city within their boundaries: but cities with less than the prescribed population and the counties to which they belong are left free to contract any desired amount of indebtedness if only for county or city purposes. But even as to the cities which are within the restraint relating to the aggregate of indebtedness, an exception is foreshadowed which would permit it to be exceeded and which requires us to look forward to a further permission. Before reaching it, a sentence is interjected which was perhaps hardly necessary, but which forbids any municipality whose debt has already reached the prescribed amount from contracting any additional liability until that existing has been reduced below the permitted aggregate. We then reach the exception foreshadowed which is of a two-fold character, and which is introduced in each of its terms by the phrase " this section shall not be construed to prevent ; " that is to say, shall not so cover or affect or apply to the two contracts described as to make either unlawful. These are, first, the issue of revenue bonds in anticipation of taxes provided that they are for amounts actually contained or to be contained in the taxes for the year when such bonds are issued and payable out of such taxes: and second, the issue of bonds for a water supply provided that their term does not exceed twenty years and that they are accompanied by a sinking fund. It seems to me quite obvious

that the provision as to term of credit and as to sinking fund is part of the description of the excepted contract and qualifies the exception. It may be paraphrased thus: a city having the prescribed population and debt aggregating the specified per cent shall not add to its indebtedness, except that it may issue certain revenue bonds and needed water bonds running twenty years and accompanied by a sinking fund. That is, the permitted aggregate in a city having the prescribed population may be lawfully exceeded for two purposes only ; one to anticipate taxes the other to procure a water supply, but in each case the debt securities must be of the particular and specified character.

The appellant undertakes to pervert the expressed condition of the exception into a primary prohibition, and insists that a correct construction would make it read that in no case shall water bonds be issued running more than twenty years. But that certainly contradicts the terms of the provision. The Constitution puts no prohibition upon cities having less than the specified population so far as city purposes are concerned. We held that in *Sweet* v. *City of Syracuse* (129 N. Y. 316), and the proposition is very clear and plain. Nor is there any restriction as it respects city purposes put upon cities having the requisite population, except where their debt has already reached the maximum limit, or has grown so near to it that the new debt proposed to be created would cross the fixed boundary and exceed the permitted amount. The conditions must concur to make the prohibition applicable, and when they do concur so that it does apply then there is the exception that water bonds of a certain prescribed form may still and nevertheless be issued. It would be an extraordinary and indefensible construction to say that a water debt, which the fundamental law so favors and deems of such imperative necessity that it permits it to be contracted even after the safe and prudent limit of debt has been reached, should be hampered with restrictive provisions when no other debt existed at all, and there could be no more danger of injurious consequences than in the case of cities having less than the prescribed population.

The obvious theory of the constitutional provision is that the smaller cities of the state needed but one restraint, and that relating to the purpose and occasion of their indebtedness and not to its amount. Such cities were not likely with their smaller necessities to make large loans and contract heavy debts, and so were left without restriction upon amounts or terms save such as the citizens might themselves impose. But the larger cities with their greater needs and the pressure of much more numerous non-taxpayers, and their swarm of claimants on the public treasury, did need restraint, not only as to the purposes of the municipal indebtedness, but as to its amount, and so the restriction in that respect also was imposed; and yet to prevent a greater evil which might result, and open the door to a necessity of the gravest character, it was enacted that even that restraint should not bar the further issue of bonds for a water supply; but since these would add to a debt already crowded to the extreme limit of prudence and safety, it was provided that such added debt should run for a moderate term of credit and be guarded by a sinking fund so as to reduce to the lowest reasonable point the continuance and menace of the debt already too large. The city which availed itself of the exceptional permission could do so only upon the conditions which were attached with a view to making the added debt as little harmful as possible. Of course the line between the smaller and the larger cities, those which did not and those which did call for a limit of permitted debt, had to be drawn somewhat arbitrarily, and was fixed at a population of one hundred thousand inhabitants as the most reasonable test capable of application.

There is no ground in the language of the constitutional provision, and no room in the reason which induced it to give it the construction upon which the defendant rested his refusal.

The judgment of the General Term should be affirmed with costs.

All concur.

Judgment affirmed.