In the Matter of the Application of THE BOARD OF RAPID
    TRANSIT RAILROAD COMMISSIONERS for the City of New
    York, Appellant, for the Appointment of Commissioners,
    etc.

STREET RAILROADS — APPLICATION FOR COMMISSIONERS — JURISDIC-
TION OF GENERAL TERM — CONSTITUTION OF 1894.   The provision of sec-
tion 18 of article 3 of the State Constitution of 1894, that when the con-
sent of property owners to the construction of a street railroad cannot be
obtained, "the Appellate Division of the Supreme Court  *  *  *  may,
upon application, appoint three commissioners," was not intended to take
effect on January 1, 1895 (Art. 15, § 1), but is intended to take effect
on January 1, 1896, when the creation of the Appellate Division goes
into effect (Art. 6, § 2), and until the latter date the General Terms of the
Supreme Court continue to have the jurisdiction heretofore possessed by
them to entertain such applications.

(Argued October 16, 1895; decided October 22, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department made October 7, 1895.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Edward M. Shepard* for the Board of Rapid Transit Railroad Commissioners, appellant. The order is appealable to this court. It was made in a special proceeding; it was a final order; it determined the entire proceeding and affected a substantial right. (Code Civ. Pro. § 190; *Reed* v. *Mayor, etc.*, 97 N. Y. 620; *Noyes* v. *C. A. Soc.*, 3 Abb. [N. S.] 36; *E. L. A. Soc.* v. *Stevens*, 63 N. Y. 341; *Tilton* v. *Beecher*, 59 N. Y. 176; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137; *In re Graduates*, 11 Abb. Pr. 301; *In re Beggs*, 67 N. Y. 120.) The General Term had jurisdiction of the application to appoint commissioners. (Const. N. Y. art. 3, § 18; art. 6, §§ 1, 2, 5, 6, 9; art. 15, § 1; Laws of 1895, chap. 529, § 59.) If the conclusion of the court below be right, then either the Appellate Division has been in existence in the first department since the designation in April last, of the justices to compose it, and in the other three departments since the designations made recently, or the Constitution of 1894 absolutely suspended for the year 1895, but for no other time, the power lawfully to construct street railroads without the consent of a majority of property owners, except where the consent of the General Term had been given prior to 1st of January, 1895. (Const. N. Y. art. 3, § 18; art. 6, §§ 2, 9, 12; *People ex rel.* v. *Fitch*, 145 N. Y. 261; *People ex rel.* v. *Lorillard*, 135 N. Y. 285.) Where public mischief or great inconvenience or absurdity will result from a particular construction, that construction is to be avoided unless the meaning of the makers of the Constitution be plain. (*People ex rel.* v. *Potter*, 47 N. Y. 375; *In re N. Y. D. R. Co.*, 42 Hun, 621, 625; 107 N. Y. 42; *People ex rel.* v. *Angle*, 109 N. Y. 564, 568; *People ex rel.* v. *Lorillard*, 135 N. Y. 285.)

PECKHAM, J.  This is an appeal from an order of the General Term of the Supreme Court of the first department, refusing to entertain the application of the rapid transit commissioners for the designation of newspapers in which to publish notices of their intention to apply to the court for the appointment of commissioners to report after due hearing whether a railroad ought to be constructed, etc.  The appeal is somewhat anomalous, as there is no adverse interest and no respondent before us.  The rapid transit commissioners are desirous of proceeding with the discharge of their duties under chapter 4 of the Laws of 1891, as amended by chapter 519 of the Laws of 1895.  They state in their application that they have adopted routes for the proposed road in the city of New York, and they claim to have complied with all the provisions of the acts above mentioned, but they allege they cannot obtain the requisite consents of the property owners along the line, and hence the necessity for an application to the court.

We are without the benefit which we always derive from an opinion of the learned court making this order, giving the reasons for its action, but, as we understand it, the court refused to entertain the application, because of its doubt whether it had jurisdiction to act upon it, such doubt being founded upon the adoption of and the provisions in the new Constitution.  The argument is, that article 3 of the Constitution took effect by the express terms of that instrument on the first day of January, 1895 (Art. 15, sec. 1), and as section 18 of article 3 provides that an application of this nature shall be made to the Appellate Division of the Supreme Court, the General Term had no jurisdiction to entertain it.  Referring to section 2 of article 6 of the Constitution, it is there seen that the Appellate Division does not come into existence, so as to exercise judicial functions, until January 1, 1896, and the consequence is stated that there is no court now in existence to which this application can be made, and the commissioners must wait until January 1, 1896, before attempting to proceed further.  The wording of the instrument in regard to the sub-

ject under discussion is such as to render a doubt as to its proper construction at least plausible, and we think the learned court was, therefore, as matter of sound policy, amply justified in refusing to entertain the application until the question should be laid at rest, because, if the court had acted and proceedings were taken which might subsequently be reviewed and reversed as unwarranted by reason of the lack of jurisdiction in the General Term, a most unfortunate state of affairs would have been created. The legal question being now presented by this appeal, whether the General Term has jurisdiction to entertain such an application during the year 1895, we have come to the conclusion that it has.

In stating our reasons for this determination, it is somewhat material to note the history of the constitutional provision directing application to be made, under certain circumstances, to the Appellate Division of the Supreme Court. It is quite brief. Prior to 1874 no provision for an application to any court existed. One of the amendments to the Constitution of 1846, adopted by the people in 1874 and taking effect on the first day of January, 1875, added several sections to art. 3, and the following is a copy of the last portion of section 18, which was among the sections so added :

" The legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which in its judgment may be provided for by general laws. But no law shall authorize the construction and operation of a street railroad except upon the condition that the consent of the owners of one-half in value the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the General Term of the Supreme Court, in the district in which it is proposed to be constructed, may, upon application, appoint three commissioners, who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, con-

firmed by the court, may be taken in lieu of the consent of the property owners."

This provision regarding the building of street railroads had continued as part of the Constitution ever since its incorporation into that instrument in 1875, and of course was in full force in 1891 when the Rapid Transit Act, chapter 4 of the laws of that year, was passed. It was in force at the time when the new Constitution of 1894 was in process of formation by the constitutional convention of that year. Section 18 of article 3 of the new Constitution is almost word for word identical with the same section in the third article of the former Constitution, excepting that in the portion relating to railroads it substitutes the phrase "the Appellate Division of the Supreme Court in the department," for that of "the General Term of the Supreme Court in the district," so that the application is by this provision to be made to the Appellate Division for the appointment of commissioners. The reason for this change in the phraseology is plain. It was simply to conform to the provisions of another article in the new Constitution providing for an Appellate Division of the Supreme Court to go into operation Jan. 1, 1896. Upon a reference to article 6 it will be seen that while the Supreme Court is continued with general jurisdiction in law and equity, the second section of that article provides for the creation of what is therein termed an Appellate Division of the Supreme Court, and the section provides that "from and after the last day of December, 1895, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms    *    *    *    and such additional jurisdiction as may be conferred by the legislature." The effect of this provision is to abolish the General Terms of the Supreme Court after the last day of December, 1895, and to substitute in their place what is termed an Appellate Division of the same court with precisely the same jurisdiction, and such additional as might be granted by the legislature.

In the meantime, however, the General Terms exist with all their jurisdiction unimpaired, unless, by the wording of that

portion of the 18th section of article 3, already alluded to, it is taken away solely as to matters of this nature, and no tribunal substituted until January 1, 1896, leaving a period of one year from January, 1895, until January, 1896, during which there would be no court in existence to which applications of this nature could be made.

It is safe to say that no such conclusion was intended by those who framed this change of phraseology, or by the people when, by their votes, they adopted the instrument in which such change occurred; it cannot be thought that while insisting upon the necessity of an application to the court under certain contingencies, there could be an intentional omission to provide for the existence of the court itself to which the application should be made. That such a condition would exist for only one year somewhat detracts from the force of this argument, yet we are unable to imagine any reason for the intentional abrogation of this jurisdiction of the General Terms during such year. For all other purposes of their creation they exist in full force up to January, 1896, yet, by this construction, the General Terms are, for the last year of their existence, shorn of their powers in this particular only, while their successor does not come into practical existence during that time.

By section 1 of article 6 the existing Supreme Court is continued with general jurisdiction in law and equity. The General Terms are but branches of that court, and the same may be said of the Appellate Division when it shall come into operation. Indeed, in substance, the Appellate Division will be nothing more than a continuation of the old General Terms under a new name and with more judges. Those judges will be selected in the same manner as were the General Term judges, from among the justices of the Supreme Court of which the Appellate Division forms a branch. The state continues to be divided into departments as it was for the General Terms, and the jurisdiction of the Appellate Division will be the same as was that of the General Terms but liable to be added to by the legislature. Absolutely no

34

reason has suggested itself to our minds which would afford a. plausible foundation for the belief that here there has been an intentional withholding of jurisdiction from the General Terms during this last year of their existence as to this one subject only.

Being convinced that there was no intention to take away this particular jurisdiction from the General Terms during the last year of their existence, the further question is whether the language of the Constitution is such as necessarily to accomplish that result.

Article 15 provides that "This Constitution shall be in force from and including the first day of January, 1895, except as herein otherwise provided."

There is no language in the 3d article which provides in express terms when such article or any particular section thereof shall take effect. By section 2 of that article it is provided that the senate shall consist of fifty members, and yet the senate sitting after January 1, 1895, consisted of but thirty-two members. Although the article took effect in one sense so far as to provide that the senate thereafter sitting should consist of fifty members, yet I think it entirely clear that it did not take effect so as to blot out the then existing senate and leave the state without a legislature until one should be elected pursuant to the provisions of the Constitution in the fall of 1895.

If the effect of article 15 upon section 18 of article 3, standing alone, were to be considered, it might perhaps be decided that the whole section took effect Jan. 1, 1895, but when we come to examine in connection with it other provisions of the new Constitution, together with the instrument to be superseded, we must, as it appears to us, come to a different conclusion.

The canons of construction applicable to written constitutions, as well as to statutes, are quite familiar to us all. They are well stated in *People ex rel. Jackson* v. *Potter* (47 N. Y. 375) in an able opinion by the late Chief Judge FOLGER. The intent is to be sought for, and, when discovered, must

prevail over the literal meaning of the words of any particular portion of the law; the general purpose is to be ascertained, and a Constitution must be also supposed to have been prepared and adopted with reference not only to existing statutory provisions but also to the existing Constitution, which is to be amended or superseded.

Looking at section 18 of the Constitution of 1846, as in force in January, 1875, and thereafter, we find in the last part of such section the provision above quoted as to street railroads. Comparing it with the same section in the new Constitution, we find the only difference to be a provision for the application to the Appellate Division instead of the General Term of the Supreme Court. Then turning to art. 6, we find that the Appellate Division does not come into existence until Jan. 1, 1896, and the Constitution, as to that division at least, does not practically take effect until the last-named time, so far at least as jurisdiction to exercise the judicial functions conferred upon it is concerned. All these provisions should be considered. We have the policy of the state, as evidenced by the constitutional amendment of 1875, insisting upon an application under the facts stated in the amendment, to the General Term of the Supreme Court. We have the Rapid Transit Act of 1891, providing in detail for the proceedings in accordance with such existing provision. We have the provision in the new Constitution exactly the same as in the old, excepting the designation of the court as the Appellate Division, and we have the creation of such division to go into effect Jan. 1, 1896. Taking all these things into consideration, it seems plain to us that the General Terms of the Supreme Court continue to have the same jurisdiction they have had ever since 1875, to entertain such an application as this, and that such jurisdiction continues until the Appellate Division comes into existence on the first of January, 1896.

For the purpose of such application the provision of the latter clause of section 18 of the new Constitution does not take effect until there is an Appellate Division capable of hearing the same, and the provision in the section of the old Con-

stitution already referred to, and also those provisions in the
Rapid Transit Statute of 1891, all providing for an application
to the General Term, remain in the meantime in force.    When
the Appellate Division comes into being and a commis-
sion previously appointed by the General Term is ready
thereafter to report, it is clear to our view that the report
is to be made to the Appellate Division the same as if it
had itself appointed such commission subsequent to Jan. 1,
1896.    Reading the section which provides for an appli-
cation to be made to the Appellate Division in connection
with the article creating that division and giving it judicial
functions only from Jan. 1, 1896, we think the time for the
taking effect of such first provision is not Jan. 1, 1895, but
that such time is within the 15th article "otherwise pro-
vided," and that it is January 1, 1896.    It cannot be pre-
tended that this phrase "otherwise provided" means other-
wise provided in express terms.    Any language used in or
any proper and necessary construction of the instrument
which shows an intention that the particular provision shall
take effect at some time other than Jan. 1, 1895, would be
sufficient.    We think this intention is shown and becomes
quite apparent in those portions of the instrument already
alluded to, especially when taken in connection with the pro-
vision on the same subject in section 18 of article 3 of the old
Constitution.    For the purpose of conforming that provision
to the Constitution as it would exist on and subsequent to
Jan. 1, 1896, the designation of the name of the court was
changed and that change was obviously intended to come into
effect simultaneously with the division which was created,
while the old provision would remain until that event took
place.    This is the result of reading all the provisions of the
Constitution together.    Any other construction would be as it
seems to us exceedingly technical, plainly contrary to the
spirit and intent of the instrument itself and quite too narrow
to be applied in such a case as this.

The provisions should receive a reasonable construction and
one that may not work a public mischief.    A construction

which shuts the doors of a court to all applications of this nature for one year and closes all operations of street railroad building in the state for that time (where an application to the court is necessary), ought not to be adopted without a plain mandate to that effect from the Constitution itself. We think no such mandate can be found.

These views lead to a reversal of the order of the General Term. The proceedings should be remitted to that court in order that the application may be there acted upon on its merits.

All concur.

Ordered accordingly.