The City of Rome, Respondent, v. The Whitestown Water Works Company, Appellant, Impleaded with Joseph Chisam and Sarah H. Chisam.

Fourth Department, May 23, 1906.

Eminent domain — municipal corporations — Laws of 1899, chapter 624, authorizing city of Rome to condemn lands for water supply construed — said act constitutional — when rights of condemnation thereunder superior to those of other parties.

Although chapter 624 of the Laws of 1899, authorizing the city of Rome to condemn lands to secure an additional water supply, does not provide for a sinking fund for the redemption of municipal bonds issued to carry out the plan, said act does not violate section 10 of article 8 of the State Constitution unless the ten per cent limit referred to in said Constitution has been reached. There is no presumption in the absence of proof to the contrary that said limit has been reached.

Although the plan to condemn lands for such additional water supply is required by section 11 of said act to be adopted by act or ordinance of the common council, the plan may be adopted at a special meeting of the common council and such a meeting is presumed to have been regularly held.

While the ordinance must be approved "by a majority of the voters of the corporation tax district" only a majority of those voting at the election is required, not a majority of all entitled to vote.

Public use and necessity are essential elements to a right of condemnation, and such questions may be put in issue and are for the court to determine.

When, however, the facts show that the present water supply is inadequate in time of drought and is contaminated, the public necessity for a further water supply is established.

Although other parties subsequent to the act of 1899, but prior to the election approving the ordinance, had filed a map and survey under the provisions of the Transportation Corporations Law, covering the same lands, the said act authorizing the city of Rome to condemn the lands conferred a paramount right on the city when there had been no actual diversion of the waters by the other parties.

The act of 1899 took immediate effect and granted a present power, and the fact that no pecuniary liability could be incurred until the taxpayers ratified the proposed plan did not postpone the taking effect of the act. The election did not affect the existence of the power but only had reference to the time of its exercise.

Appeal by the defendant, The Whitestown Water Works Company, from a final order of the Supreme Court, made at the Oneida

Special Term and entered in the office of the clerk of the county of Oneida on the 5th day of January, 1905, confirming an award made by commissioners in the above-entitled condemnation proceeding, with notice of an intention to bring up for review upon such appeal an interlocutory judgment in favor of the plaintiff, entered in said clerk's office on the 13th day of April, 1903, upon the report of a referee.

*Thomas D. Watkins*, for the appellant.

*Oswald P. Backus, John S. Baker* and *Thomas S. Jones*, for the respondent.

Interlocutory judgment and final order affirmed, with costs, on opinion of MERWIN, referee.

All concurred.

The following is the opinion of the referee:

MERWIN, Referee:

The plaintiff in this case, for the purpose of inaugurating its system for obtaining from Fish creek, under the provisions of chapter 624 of the Laws of 1899,[*] an additional supply of water for public use, seeks to obtain by condemnation certain real estate owned by the defendant company and situated on the east bank of said creek. The defendant claims not only that the plaintiff has not made out a *prima facie* case for condemnation, but also, that if the plaintiff has made out such case, still the defendant company in its business of supplying water for public use has a prior right to the property in question, and that, therefore, the plaintiff has no right to condemn it.

In section 15 of the act of 1899 provision is made for the issuing of bonds by the common council of the plaintiff for the purpose of raising money to carry out the proposed plan. No provision is made for a sinking fund. It is, therefore, claimed by the defendant that, in the absence of such a provision, the city, under the requirements of section 10 of article 8 of the Constitution, has no right to issue the bonds, and is, therefore, disabled from taking the present proceeding. The constitutional requirement as to a sinking

---

[*] Charter (Laws of 1870, chap. 25), tit. 11, §§ 1–20, as amd. and added by Laws of 1899, chap. 624.— [REP.

fund does not apply to a case where the ten per cent limit referred to in the Constitution has not been reached. (*City of Rochester* v. *Quintard*, 136 N. Y. 221.) It does not appear here that such limit has been reached. In the absence of such proof I cannot assume that in this regard there is or will be any violation of the Constitution. Some other constitutional objections are set up in the defendant's answer, but as no point is made about them in the argument before me they need not be here discussed. I shall, therefore, assume that the Constitution does not interfere with any right the plaintiff may have under the act to prosecute this proceeding.

By section 11 of the act of 1899 it is provided that before any pecuniary liability shall be incurred by the city in regard to obtaining an additional supply of water authorized by section 10, the common council of the city shall by an act or ordinance adopt and prescribe such plan, estimate, system or source of water for the increased supply as shall be recommended and approved by the board of water and sewer commissioners of the city as most feasible and best adapted to supply the requisite quantity and quality of water, together with the estimated cost and expense thereof, and shall submit the same for approval to the voters of the corporation tax district of the city of Rome in the manner provided in section 13 of title 5 of the charter of the city.* If the ordinance is approved " by a majority of the voters of the corporation tax district " (§ 12 of the act) then the board is directed to proceed to carry out the plan, and if necessary is authorized (§ 13) to take condemnation proceedings as prescribed by the Code of Civil Procedure.†

It is claimed by the defendant that in two respects the proceedings in regard to the ordinance are defective : *First*, that it was adopted by the common council at a special meeting, and it is not shown that such meeting was regularly called ; *second*, that it was not approved by a majority of the voters of the corporation tax district, as required by section 12. The presumption is that the special meeting of the common council was regularly held. (*People ex rel. Locke* v. *Common Council of City of Rochester*, 5 Lans. 11 ; *Nelson* v. *Eaton*, 26 N. Y. 410, 415 ; 20 Am. & Eng. Ency. of Law [2d ed.], 1212.) That presumption is not overcome.

---

* Laws of 1870, chap. 25, tit. 5, § 13, as amd. by Laws of 1871, chap. 49.— [REP.
† Chap. 23, tit. 1.— [REP.

The question as to the approval by the voters depends on whether a majority was required of those voting or of those entitled to vote. If the latter is the test the ordinance was not duly adopted, as the defendant has shown that the number of qualified voters in the corporation tax district, within the description of section 13 of title 5 of the charter, exceeded at the time of the election, twice the number of those voting for the ordinance. The point made by the plaintiff that it was also incumbent on the defendant to show by direct evidence that the persons claimed to be qualified voters were citizens of the United States is not, I think, well taken. The defendant could in that regard rely on the presumption from the proof made. (*State* v. *Beackmo*, 6 Blackf. (Ind.) 488; 22 Am. & Eng. Ency. of Law [2d ed.], 1285.) I am, however, of the opinion that a majority of those voting was all that was necessary. Clearly that was the rule laid down in section 13 of title 5 of the charter for the elections therein referred to. They related to taxes for extraordinary or special purposes, and there was no reason for having a different rule on the occasion in question. If a majority of the qualified voters was required, a practical difficulty would arise in determining the result of the election. There are no provisions as to how or when or by whom the number of qualified voters shall be ascertained. If the expression " a majority of the voters of the corporation tax district " in section 12 of the act of 1899 is to be deemed controlling, still that is satisfied by a majority of those voting. (*Carroll County* v. *Smith*, 111 U. S. 556. See, also, *Smith* v. *Proctor*, 130 N. Y. 319; Dillon Mun. Corp. [4th ed.] § 44.) The intention of the statute of 1899 was, I think, to apply the same rules to elections under its provisions as were applicable to similar elections provided for by the charter.

Public use and necessity are essential elements to the obtaining of condemnation. There must, as said in *Matter of N. Y. C. & H. R. R. R. Co.* (77 N. Y. 248), be a reasonable necessity for the corporation to have the property in order to discharge properly its duty to the public. It is here claimed by the defendant that no such necessity is shown by the plaintiff. The plaintiff, however, says that the question of necessity is for the municipality to determine, and cannot here be contested. The act of 1899 (§ 10) empowers the city by its proper officers to extend and increase, from time

to time as may be necessary, its present water system and supply and to secure an additional supply of pure and wholesome water from Fish creek or other suitable stream in the county of Oneida by such feasible system as its board of water and sewer commissioners should recommend and deem best. By section 13 it is provided that if purchase of desired property cannot be made by agreement, then the condemnation proceedings prescribed by the Code may be resorted to. In those proceedings the questions of public use and necessity may be put at issue.

It is conceded that the element of public use exists. Undoubtedly it was in the power of the Legislature to make the action of the officers of the city conclusive on the question of necessity. The intent to do so should clearly appear. In view of the limit on the power to take property to such as may from time to time be necessary, and the provision that in case of disagreement with an owner the provisions of the Code should be resorted to, and that under those provisions the necessity could be put at issue, I am of the opinion that the question of necessity is for the court to determine.

The plaintiff since 1872 has obtained its water supply from the Mohawk river, being authorized by chapter 352 of the Laws of 1872 * to take it from the river at any point within the city. The amount seems to have been adequate except in times of drouth when the State through the operation of its canal feeders largely exhausted the supply. The needs of the State are not likely to decrease. The water of the river is somewhat contaminated by the drainage upon its route and also from the spillways along the Black River canal. The impurities from these sources might be diminished by proper action on the part of the plaintiff, though perhaps at considerable expense.

It seems to me that the effort of the plaintiff to secure an additional supply from Fish creek is reasonable. The lurking danger in the quality of the water it now uses and the increasing liability to dangerous shortage by reason of the needs of the State at a most inopportune time are potent circumstances. I am of the opinion that reasonable necessity is shown. As said in *Pocantico Water*

* Among other things, adding title 11 to the charter (Laws of 1870, chap. 25).—[REP.

*Works Co.* v. *Bird* (130 N. Y. 260), in a matter of such extreme necessity all contingencies should be provided for.

If the necessity exists, the selection of the source or system is, by the act of 1899 (§§ 10, 11), left to the authorities of the city (*Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *Matter of New York, L. & W. R. Co.*, 35 Hun, 220, 230), as well as the location of the dam, which is the purpose for which the property in question is desired.

If the foregoing views are correct, the plaintiff is entitled to the relief it asks, unless the defendant has shown that it has a prior right.

The defendant seeks the benefit of the rule that lands already taken for and devoted to a public use by a corporation in pursuance of law, cannot be taken by another corporation for a public use without special authority from the Legislature.

It appears that the defendant company was incorporated May 13, 1899, pursuant to the provisions of the Transportation Corporations Law, for the purpose of supplying water to the town of Whitestown and the village of Whitesboro. Contracts were made with those localities. On June 25, 1900, a contract was made with the town of New Hartford, and on October 24, 1900, the defendant's certificate of incorporation was amended so as to include that locality. Under these contracts the defendant furnished water, taking it from a stream in the town of Whitestown. This source having become inadequate, the defendant on April 8, 1901, authorized its superintendent to purchase lands or water rights upon or in the vicinity of Fish creek. Thereupon from April 13 to May 6, 1901, divers conveyances or options were obtained for the benefit of the defendant from the owners of a number of parcels of land along either side of the creek and abutting thereon. Among these was a deed of the property in question bearing date May 6, 1901. On the 20th of April, 1901, the defendant entered into a contract with the town of Lee, for permission to lay water mains and pipes in its streets, and in consideration thereof agreeing to furnish during the enjoyment of such privilege certain hydrants and water to the town, and on May 7, 1901, the company filed an amended certificate of incorporation, including the town of Lee. On the 6th of May, 1901, the defendant filed a map and survey of lands on each side of

Fish creek, intended to be taken and used by the company for the purposes of its incorporation. This map includes the lands here in controversy. Such a map and survey was, by section 83 of the Transportation Corporations Law,* required to be filed by the corporation, before entering upon, taking or using any land for the purposes of its incorporation. Section 84 † authorized such corporation to acquire the right to divert the flow of waters "from the lands of riparian owners and from persons owning or interested in any waters."

The plaintiff, by its board of water commissioners, commenced the consideration of an additional supply of water in March, 1897, by the employment of an engineer to make surveys and report upon plans and estimates. Such report was made and filed October 6, 1897. The engineer in his report considered three plans, one of which was the taking of water from Fish creek, and evidently was in favor of that plan. The act of 1899 was passed May 23, 1899, and by its terms took effect immediately. On the 20th of September, 1899, the board of water commissioners, by resolution, recommended and approved the Fish creek plan, and one of the estimates of the engineer, and requested the common council to adopt and prescribe the same and submit them for approval to the voters. This request was not acted on by the common council. On April 19, 1901, a similar resolution and request were adopted by the board at a different estimate of cost. This was acted upon by the common council on April 24, 1901, and the plan and estimate, recommended and approved by the board, was adopted and prescribed and an election called for May 8, 1901. Notice of this election was first published on April twenty-sixth. At the election the ordinance was approved.

It is in substance claimed by the defendant that, inasmuch as its map and survey were filed May 6, 1901, and before the election, its right to the property in question and to the waters of Fish creek is paramount to that of plaintiff. That depends on the force to be given to the act of 1899. That act, so far as it conferred the right to divert water, was in effect a modification of the general power of diversion of water given in the act under which defendant was incorporated. The act of 1899 being subsequent and specific must control. (Suth. Stat. Const. § 325.) An exception is engrafted

---

* Laws of 1890, chap. 566.— [REP.     † As amd. by Laws of 1894, chap. 230.— [REP.

upon the general act.   As the two acts are read together, the general power is given except that the city of Rome has the right from time to time to obtain as needed an additional supply from Fish creek or other suitable stream in the county of Oneida.   The act of 1899 took effect immediately and granted a present power.   The fact that no pecuniary liability could be incurred until the taxpayers ratified the proposed plan, did not postpone the taking effect of the act.   The election did not affect the existence of the power, but only had reference to the time of its exercise.   No time was fixed within which the city should act.   The provision in the Transportation Corporations Law requiring a map and survey to be filed did not apply to the city.   It did in fact act, and by proceedings of official record make its selection of plan and source before the defendant filed its map and survey or purchased the particular property in question.   The defendant has made no actual diversion of the water.   The steps it has taken are preliminary.

The plain intent of the act of 1899 was, as it seems to me, to give the city of Rome a preference, so far as the waters of Fish creek were concerned.   There was a definite and specific declaration to that effect.   This, undoubtedly, was within the power of the Legislature.   (*Matter of Union Ferry Co.*, 98 N. Y. 139, 153; Mills Em. Dom. § 11.)   In the construction of statutes, the intent is controlling.   (*People ex rel. Twenty-third Street R. R. Co.* v. *Comrs. of Taxes of N. Y.*, 95 N. Y. 558.)

It will hardly do to say that the grant or power did not exist until the taxpayers had ratified the proposed plan.   Such a construction would put the Legislature in the attitude of saying to the city, You may take the waters of Fish creek from time to time as you need them, unless some corporation under the general law take them or file a map and survey before you need the water or your taxpayers have an opportunity to vote.   Such construction would, I think, be repugnant to the purpose of the act and no intent of that kind can properly be inferred.   If, for the interest of the general public, the law is too broad, the remedy is with the Legislature and should not be reached by construction.   According to the evidence there is plenty of water for both parties, but the amount the plaintiff may take is not here for determination.

I see no way to avoid the conclusion that the right of the plain-

tiff is paramount and that any right the defendant company may have under the general law is subject to the reasonable exercise by plaintiff of its prior right.

In this view it is not important here to determine whether the ownership of the bed of the creek is in the State or in the riparian owners. In either case the plaintiff would have the right to condemn the property described in the complaint.

Upon the issues before me the plaintiff is, I think, entitled to judgment.