In the Matter of the Application of EDITH E. ARMITAGE for an Order of Mandamus against the BOARD OF EDUCATION OF THE CITY OF AUBURN, N. Y.

Supreme Court, Cayuga Special Term, February (Received March, 1924).

Education Law — mandamus to compel board of education of the city of Auburn to fix salary pursuant to Education Law, article 33-B — construction of statutes — when court warranted in adopting interpretation placed on statute by commissioner of education — meaning of words " year of service " in Education Law, section 888.

All statutes are to be construed as having a prospective operation unless a retroactive effect is declared or the language is so clear, strong and imperative that a contrary intention is clearly apparent.

In 1917 the Education Law was amended by adding thereto article 33-A (§§ 865-881) by chapter 786 of that year, and by virtue of section 872(6) the annual salaries of the teachers in the public schools of Auburn continued to be fixed as they had been for years previous by such contract as the teachers and the board of education saw fit to make. In 1919 the Education Law was amended by adding thereto article 33-B (§§ 882-889), fixing the salaries of the members of the teaching and supervising staff, and section 888 provided that a teacher serving under a schedule which provided for annual increments should receive for any given year of service the salary and the increments provided in said schedule for the year which corresponds to her year of service unless her services for the year immediately preceding have been declared to be unsatisfactory to the board of education. By chapter 680 of the Laws of 1920 section 886 of the Education Law was amended by changing the minimum salary for the first year of service from $720 to $1,000, and was again amended by chapter 851 of .he Laws of 1923 by fixing the annual increments to be paid to teachers in the elementary schools of cities having a population of less than 50,000, at $75. The said amendatory act of 1920 also added to the Education Law section 888-b which pertains to union free school districts.

The petitioner, who has been a competent and faithful teacher in one of the grade schools of the city of Auburn for upwards of twelve years last past, and whose present salary is $1,475, upon the claim that she is entitled to at least the $1,000 provided as the minimum salary for teachers in her class for the first year of service, and an increase at the rate of $75 a year for at least eight years of her service, although three of those eight years antedate the passage of article 33-B of the Education Law, upon which she relies, applies for a peremptory order of mandamus to compel the board of education to adopt a resolution fixing her

annual salary for the school year 1923–1924 at $1,600. *Held,* that as no appeal has ever been taken from the determination of the commissioner of education that it was not mandatory upon the board of education to give annual increments for years of service rendered prior to the enactment of article 33-B of the Education Law and the binding force of his decision has been acquiesced in at least by silence, and the legislature not having in the enactment of chapter 851 of the Laws of 1923, by which section 888 of the Education Law was not altered, manifested any dissent from the interpretation placed upon the statute by the commissioner of education, the court was warranted in adopting such construction and the motion will be denied, but without costs.

The words " year of service " in section 888 of the Education Law refer to service performed since 1919, when article 33-B of that statute, fixing the salaries of the members of the teaching and supervising staffs, went into effect, and not prior thereto, and said section 888, so far as it applies to salaries to be paid in cities of the third class, requires a minimum salary to be paid to members of the teaching and supervising staffs in elementary schools of $1,000 plus the annual increment for each year of service since 1919, but not before.

MOTION for a peremptory order of mandamus.

*E. L. Robertson,* for petitioner.

*Wm. S. Elder,* for Board of Education of Auburn, N. **Y.**

*Frank B. Gilbert,* for the State Education Department.

EDGCOMB, J. The petitioner, Edith E. Armitage, a teacher in one of the Auburn grade schools, brings this proceeding for a peremptory mandamus order to compel the board of education of that city to adopt a resolution fixing her annual salary for the school year 1923–1924 at $1,600, pursuant to what she claims is the mandatory provision of article 33-B of the Education Law.

The case turns on the construction to be given to section 888 of that law. Briefly stated, the question involved is whether that section, as now amended, compels the various boards of education in cities of the third class to increase the salaries of teachers by an increment of seventy-five dollars for each year of service, not more than eight, performed prior to 1919, when said act took effect. Petitioner claims that it does. The board of education of Auburn, and the state education department, which has intervened, because this is a test case, and the decision will affect the salaries paid to the supervising and teaching staff in the various cities of the third class and the union free school districts of the state, take the opposite view.

To properly determine this question it becomes necessary to briefly review the statutory history of that portion of the Education Law upon which the petitioner relies. Prior to 1917 the boards of education of the various cities, with a few exceptions, made such contracts with their teachers as they thought proper, unhampered by any legislative requirements. They derived their

authority from city charters and special acts.    In 1917 article 33-A was added to the Education Law by chapter 786 of the Laws of that year.    This article created boards of education in each city of the state, and authorized such bodies, among other things, to create, abolish and maintain such teaching and supervising positions as in their judgment were necessary for the proper and efficient administration of their work.    Subdivision 6 of section 872 provided that the salaries of all teachers should continue to be on the same basis and regulated and increased in the same manner and by the same provisions of law and under the same conditions as when the article went into effect.    The annual salaries of the teachers in the public schools of Auburn, therefore, continued to be fixed, as they had for years previous, by such contracts as the teachers and the board of education saw fit to make.

About this time the teachers in our public schools, like all other salaried people, began to feel the effect of the increased cost of living and the impossibility of making two ends meet on the meagre salary they were receiving.    A crisis arose in the educational world, and many a competent teacher was compelled by necessity to seek a livelihood along other lines.    Numerous municipalities were unable to pay sufficient salaries to retain competent teachers, and the schools were suffering because of their loss.    Then it was that the state stepped in, and adopted a policy of forcing the payment of a living wage to teaching and supervising staffs of the public schools, by increasing and fixing the minimum salary to be paid to persons holding such positions.    State aid was given to the several cities and districts to enable them to pay the required increases.    It was recognized that a teacher of experience was worth more and entitled to greater compensation than a novice, and so it was decided to fix the minimum salary to be paid for the first year of service at a certain sum, and to provide for an increase in each of the eight succeeding years in the form of annual increments.    Consequently in 1919 article 33-B, fixing the salaries of the members of the teaching and supervising staffs, was inserted in the Education Law.    Section 882 required the board of education of each city of the state to adopt by-laws establishing uniform schedules of salaries for all members of supervising and teaching staffs in each city.    Section 886, as originally passed, fixed the salaries of teachers of kindergarten and first to eighth year classes in cities of the third class for the first year of service at not less than $720, and the number of annual increments at not less than eight, but failed to specify the amount of such annual increment, leaving that question to the discretion of the board of education of each particular city.    Section 888 provided that a teacher

serving under a schedule which provided for annual increments should receive for any given year of service the salary and the increment provided in said schedule for the year which corresponds to his year of service, unless his services for the year immediately preceding had been declared to be unsatisfactory by the board of education.

In 1920 section 886 was amended by changing the minimum salary for the first year of service from $720 to $1,000, and by adding section 888-b, the provisions of which pertain to union free school districts. Laws of 1920, chap. 680.

Section 886 was again amended by chapter 851 of the Laws of 1923, by fixing the annual increment to be paid to teachers in the elementary schools of cities of a population of less than 50,000 at seventy-five dollars. The act now provides that on and after the 1st day of August, 1923, the salaries of teachers in the elementary schools of cities of the third class shall not be less than one thousand dollars for the first year of service, and the annual increment shall be not less than seventy-five dollars and the number of annual increments shall be not less than eight.

Miss Armitage has been a competent and faithful teacher in the elementary schools in the city of Auburn for upwards of twelve years last past. She claims to be entitled to at least the $1,000 provided as the minimum salary for teachers in her class for the first year of service, and an increase at the rate of $75 a year for at least eight years of her service, although three of those eight years antedated the passage of the act upon which she now relies, making a total of $1,600. She puts a literal construction on section 888, and insists that " year of service " means year of service whenever performed. She says that had it been otherwise the legislature would have used some appropriate expression, like " commencing with the year said schedule has been fixed," or some similar phrase.

The cardinal rule governing the construction of statutes is to ascertain, if possible, the intent of the legislature, and having ascertained the purpose and aim of that body, the language of the statute must yield thereto. *Farmers' Bank* v. *Hale*, 59 N. Y. 53, 57; *People ex rel. McNeile* v. *Glynn*, 128 App. Div. 257. It appears to me that nothing can be more plain than that the legislature never intended to recognize service performed prior to 1919, the date of the passage of the original act.

Prior to the enactment of article 33-B, Auburn was not required to adopt or file schedules of salaries of its teachers. Section 888 only applies to " a member of a supervising and teaching staff in such schools *serving under a schedule* which provides for annual increments." "Any given year of service " as used in that section means any year of service under the schedule. Prior to 1919 the

petitioner was not serving under any schedule which provided for annual increments, because no such schedule was adopted until that year.

It will be noted that section 888 provides for the yearly increase in pay of the teacher " unless his services for the year immediately · preceding have been declared   *   *   *   to be unsatisfactory, after opportunity to be heard." If the board were now to automatically allow for services performed before the enactment of the act it could not withhold an annual increment for a year prior to 1919 when the services of the teacher had been unsatisfactory. This provision clearly reveals that the legislature intended that the provisions of the act should apply only to future service.

The conclusion already indicated becomes fixed rather than disturbed and hardened rather than softened by resorting to the presumptions in which the court may properly indulge as an aid in construing a statute. It appears to me that at least two such presumptions may properly be invoked here. All statutes are to be construed as having a prospective operation, unless a retrospective effect is declared, or unless the language is so clear, strong and imperative that a contrary intention is clearly apparent. *U. S. Fidelity Co.* v. *Struthers Wells Co.,* 209 U. S. 306; *Orinoco Realty Co.* v. *Bandler,* 233 N. Y. 24; *Jacobus* v. *Colgate,* 217 id. 235; *N. Y. & Oswego M. R. R. Co.* v. *Van Horn,* 57 id. 473; *Weisberg* v. *Weisberg,* 112 App. Div. 231.

The petitioner insists that she is not seeking to impress upon this statute a retroactive construction. It is true that she is not attempting to recover for services performed in any year prior to the current year. But she is seeking to turn the statute backward and have it look upon things past; she aims to have the law take cognizance of service she performed before the act was passed, in order to fix her salary for the present year. This gives a retrospective effect to the statute, and should be avoided, as there is nothing in the act itself which indicates that the legislature intended that it should affect or concern what is past.

Another well-recognized canon of construction is that the court may take judicial notice of the practical construction of the provisions of a statute given to it by the administrative officers charged with its application and enforcement, and that such interpretation is entitled, where the meaning of the statute is doubtful, to great, if not controlling, weight. *Bullock* v. *Cooley,* 225 N. Y. 566, 571; *Grimmer* v. *Tenement House Dept.,* 205 id. 549; *City of New York* v. *N. Y. City Ry. Co.,* 193 id. 543, 549; *Matter of Washington Street Asylum & Park R. R. Co.,* 115 id. 442; *People ex rel. Williams* v. *Dayton,* 55 id. 367; *Greenwald* v. *Weir,* 130 App. Div. 696, 701;

affd., 199 N. Y. 170; *Matter of Board of Street Opening*, 12 Misc. Rep. 526; affd., 91 Hun, 477; affd., 149 N. Y. 575; *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *State* v. *Rutland R. R. Co.*, 81 Vt. 508.

This canon does not mean that the court can hide behind the ruling of the department of education, and blindly follow its lead, and thus escape the duty of interpreting the statute, because after all is said and done the court is the final arbiter as to the proper construction to be given to this act, and in discharging that function should, if after mature deliberation it concludes that the position of the department is untenable, disregard its interpretation. However, great importance should be attached to the position taken by the department, especially when it has been universally acquiesced in by those interested.

Section 491 of the Education Law (§ 2, ¶ E) gives to the commissioner of education the right, in his discretion, to withhold from a city or union free school district the whole or a portion of a teacher's quota for failure of the board of education to place a teacher in the schedule to which she is justly entitled. Hence it is necessary for the commissioner to determine whether the salaries and increments paid to teachers in the various cities and union free school districts of the state are in conformity with the law. In making such determination the commissioner has from the very first held that it was not mandatory upon a board of education to give annual increments for years of service rendered prior to the adoption of article 33-B. Such instructions were broadcasted, in the form of bulletins, to the boards of education of the various cities of the state. This interpretation and construction of the acts of 1919 and 1920 has been continuously and consistently followed by the department. In one department circular will be found these words: " The law does not compel a board of education to give a minimum plus eight annual increments, if the teacher has served for eight or more years." No appeal from such decision has ever been taken, and the binding force thereof has by silence, at least, been acquiesced in.

This information must have found its way to the legislature, and the position taken by the department of education must have been known to that body at its session in 1923, when it passed chapter 851, amending the Education Law in relation to salaries of teachers. It is very significant that the amendment applied only to sections 886 and 886-b, and that section 888 was not altered. If the construction put upon the latter section by the department was not in accord with the intention of the legislature, if that body had purposed that a teacher's salary should include an annual increment for every year of service, not exceeding eight, whether performed

before or after 1919, it is inconceivable that when it had before it for consideration an amendment to this very act the legislature would have failed to amend section 888, so as to make it clearly express the meaning intended.

If the legislature does not show any dissent from the interpretation placed upon a statute by those having its enforcement in charge the court will consider itself warranted in adopting such construction. Lewis-Suth. Stat. Const. § 474; *State Board of Tax Commissioners* v. *Holliday,* 150 Ind. 216; *Price* v. *Lancaster County,* 189 Penn. St. 95.

It follows that when section 888 alludes to " year of service," it refers to service performed since 1919, when the original act went into effect, and not prior thereto. Hence the proper construction to put upon that section, so far as it applies to salaries to be paid in cities of the third class, is that the section requires a minimum salary to be paid to members of the supervising and teaching staff in elementary schools of $1,000 plus the annual increment for each year of service since 1919, but not before.

The present salary paid petitioner is one thousand four hundred and seventy-five dollars, and exceeds one thousand dollars, the basic minimum salary for teachers of her class, plus five annual increments at the rate of seventy-five dollars each. Hence it is useless to consider the question of whether the annual increments for services performed since the passage of the original act should be figured at seventy-five dollars for each year, or whether such increment should be based upon the amount fixed by the board of education for the years when that body had the authority to fix such amount, and at seventy-five dollars for the year when the mandate of the statute as to the sum to be paid was supreme.

Taking the view which I do, it is needless to discuss the interesting question of whether this statute can change or alter the contract fixing petitioner's salary for the present year, made by her and the board of education prior to the passage of the act of 1923, or whether said act is in violation of section 10 of article 1 of the Federal Constitution, in that it impairs the obligation of a contract.

Motion denied, without costs.

Ordered accordingly.