JUNE O'TIER, Appellant, *v.* WALTER SELL, Respondent, Impleaded with KARL R. TREVOR and Another, Defendants.

Fourth Department, June 27, 1929.

*Dodd, Lessen & Ginnelly [Irving H. Lessen* of˙ counsel], for the appellant.

*Mackenzie, Smith, Lewis & Michell [Charles E. Spencer* of counsel], for the respondent.

EDGCOMB, J.   Plaintiff takes exception to an order of the Special Term, setting aside the service of the summons and complaint upon the defendant Walter Sell.   Service was made pursuant to the provisions of section 285-a of the Highway Law (added by Laws of 1928, chap. 465) as it stood before it was amended by Laws of 1929, chapter 10, and made a part of the Vehicle and Traffic Law by chapter 54 of the Laws of 1929.

The section, as it stood at the time service was made, read as follows:   " § 285-a.   Service of summons on non-residents.   The operation by a nonresident of a motor vehicle on a public highway in this State shall be deemed equivalent to an appointment by such nonresident of the Secretary of State to be his true and lawful attorney upon whom may be served the summons in any action against him, growing out of any accident or collision in which such nonresident may be involved while operating a motor vehicle on such a public highway; and such operation shall be deemed a signification of his agreement that any such summons against him which is so served shall be of the same legal force and validity

as if served on him personally within the State. Service of such summons shall be made by leaving a copy thereof, with a fee of two dollars, with the Secretary of State, or in his office, and such service shall be sufficient service upon such non-resident provided that notice of such service and a copy of the summons are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt, the plaintiff's affidavit of compliance herewith, and a copy of the summons and complaint are filed with the clerk of the court in which the action is pending. The court in which the action is pending may order such extensions as may be necessary to afford the defendant reasonable opportunity to defend the action."

The parties differ as to whether this provision applies to the facts of this case. The constitutionality of the act is not questioned. It could not well be in light of the decision of the Supreme Court of the United States in *Hess* v. *Pawloski* (274 U. S. 352).

Respondent is a non-resident of this State. He lives in Johnstown, Penn. In July, 1928, he came to Syracuse, and while his automobile was being driven on one of the public streets of that city, it collided with a car in which the plaintiff was riding. Plaintiff sues to recover the damages which she sustained in that collision.

At the time of the accident Sell was not physically operating the machine; he was not even in the car. It was being driven by the defendant Trevor, who was a mechanic employed by the other defendant, H. H. Franklin Manufacturing Company. Sell's car had become overheated, and the day before the accident he took it to the Franklin shop in Syracuse for inspection and repair. Trevor was put to work on the machine, and he, in company with Sell, drove about the city in an endeavor to locate the trouble. They were unsuccessful. Sell left the car at the shop, with the understanding and agreement that Trevor was to continue his efforts to find the cause of the overheating, and make the necessary repairs. The next day Trevor installed new baffles, and took the car out to determine whether the difficulty had been corrected or not. While driving the car for this purpose, the accident happened. Concededly, Trevor was operating the car at the time with the express or implied permission of the owner. Unless it should be held that the Franklin Company was an independent contractor engaged in repairing the automobile, I think that it could be said that Trevor was actually operating the car in the business of the owner and for his benefit.

Defendant claims, and the court below has so held, that under the circumstances disclosed here, section 285-a of the Highway

Law is inapplicable, and does not permit service of the summons to be made on the owner in the manner therein specified. It is urged that the words " operation " and " while operating," as used in the statute, mean the physical operation of the car by the owner, and that they are not broad enough to cover a manipulation of the gears, pedals and steering wheel by a servant, although done in the business of the owner, or by one who is driving the car with the permission of the owner, express or implied.

The underlying principle applicable to the construction of all statutes is to ascertain and follow the intent of the Legislature. If the words used do not accurately express the purpose of the law-making body, the language of the act must, within reasonable limits, yield to that intent. (*Matter of Rapid Transit Comrs.*, 147 N. Y. 260, 266; *People ex rel. Twenty-third St. R. R. Co.* v. *Comrs. of Taxes of N. Y.*, 95 id. 554, 558; *Farmers' Bank* v. *Hale*, 59 id. 53, 57; *People ex rel. Jackson* v. *Potter*, 47 id. 375, 379; *City of Rome* v. *Whitestown Water Works Co.*, 113 App. Div. 547, 554; *Matter of Armitage* v. *Board of Education*, 122 Misc. 586, 589; affd., 210 App. Div. 812; affd., 240 N. Y. 548; *Onondaga Water Service Corp.* v. *Crown Mills, Inc.*, 132 Misc. 848, 854.)

In determining what the Legislature had in mind when it enacted this provision, it is proper to take into consideration the occasion for the passage of the act, and the mischief which it was sought to correct. (*Cohen* v. *Neustadter*, 247 N. Y. 207; *Woollcott* v. *Shubert*, 217.id. 212; *People ex rel. Peake* v. *Supervisors of Columbia Co.*, 43 id. 130, 132; *Tonnele* v. *Hall*, 4 id. 140; *DeCamp* v. *Thomson*, 16 App. Div. 528, 537; affd., *sub nom. DeCamp* v. *Dix*, 159 N. Y. 436; *Tonjes* v. *Tonjes*, 14 App. Div. 542, 547.)

With these rules in mind, let us turn our attention to the situation which brought this statute about, and put ourselves, if possible, in the place of the Legislature. With the advent of automobiles and good roads, State boundaries, so far as travel is concerned, have largely been wiped out. Today one sees everywhere a flock of foreign cars traveling back and forth over the highways of this State. The use of a motor vehicle on our crowded highways, even when it is carefully operated, is ofttimes a menace to the traveling public. Accidents are daily occurrences, and serious injury frequently follows in the wake of such disaster. Actions to recover resulting damage are common. Prior to the adoption of this section, if one was injured by a non-resident while using our highways, it was well nigh impossible to get service of a summons on him. If he could not be brought into this State, and have the question of his liability tried out and determined here, the result would, to a large extent, free him from all responsibility

for his own negligence, for the injured party could not well, under ordinary circumstances, go into his forum and sue him there. He could use our highways, built and maintained at the expense of the taxpayers of this Commonwealth, for his own pleasure or convenience, but when he was asked to make good the results of his negligence he could keep beyond the jurisdiction of our courts, and escape liability. The Legislature evidently thought that it was no more than fair and right to put residents and non-residents, who used our highways for their own advantage, on the same basis when it came to responding in damages for their negligence. No reason can be conceived why that should not be done. To make this possible, the section in question was passed.

A person struck by a car is just as badly injured if the owner is at the wheel as he would be if his servant or permittee is driving the machine, and *vice versa*, and the reason for making it possible to bring him within the jurisdiction of the courts of this State would be the same in both instances.

If this statute is to be limited to an actual operation of a car by the owner, it would be practically emasculated, and would fall far short of fulfilling the purpose for which it was enacted. Such a construction would prevent service upon a non-resident owner where he sat on the front seat beside his chauffeur, and directed the movement of the car, but did not have his hands on the wheel or his feet on the pedals, or where the owner, for his own pleasure or profit, was touring through the State with his family, and where he was directing the trip, but at the moment of the accident some other member of the family was actually driving the car, or where a liability had been created by section 282-e of the Highway Law.*

The Legislature could never have intended to so limit the word " operation." Such a construction puts altogether too narrow a construction on this section.

Our attention is called to the case of *Witherstine* v. *Employers' Liability Assur. Corp.* (235 N. Y. 168), where it was said that the word " operate," as employed in connection with the use of a motor vehicle, signified a personal act in working the mechanism of the car. The *Witherstine* case involved the construction of a contract of insurance. The policy contained a provision that it should apply only while the automobile insured was being operated by the insured, naming him, who was the owner of the car, or by a person connected with a garage in connection with repair work, testing,

---

* Added by Laws of 1924, chap. 534, as amd. by Laws of 1925, chap. 167; Laws of 1926. chap. 730, and Laws of 1928, chap. 508; now Vehicle and Traffic Law, § 59.— [REP.

delivering or calling for said automobile. What was written in that case was said with the facts as there developed before the court. The provision above referred to was contained in a rider attached to the policy, and the consideration of the agreement was the reduced premium. The intent of the parties to limit the physicial operation of the car to one person, viz., the insured, who happened to be the owner, because of the reduced premium, was very apparent. The rider was a standard one, commonly known as a " one-driver " clause. Concededly, the risk assumed by the company would be less where the car was to be driven by one person than it would if it were to be operated by several. The purpose of the parties was also indicated by the words which followed concerning the operation by some person connected with a garage. Any other construction would make these words superfluous.

The intent of the parties controls the interpretation of contracts, the same as the intent of the Legislature dominates in case of a statute. I do not think that what was said in the *Witherstine* case is controlling here, where the nature of the case and the facts are so different, and where the intent of the parties leads to one conclusion, and the intent of the Legislature to another.

The word " operate " is broad enough to cover the management of a business enterprise, although not physically conducted by the owner. As frequently used in every-day life, the word is not confined to the actual exertion by the operative of the physical or mechanical power necessary to bring about the desired result. The owner operates his farm, although he does not personally work in the field or the stable. The president of a railroad company can truthfully say that he operates the road, notwithstanding the fact that he never touches the lever of the locomotive, or a switch along the line.

Because the word is used in a limited sense in certain sections of the Highway Law does not make a like qualification necessary when we come to construe this new section, which was not found in the original act, and which has no part in the general scheme of the chapter. This provision has to do with the service of a summons, and might just as well have been added to the Civil Practice Act. The intention of the Legislature is so apparent that I think this new section should be considered by itself, and separate and apart from the rest of the Highway Law.

The act defines the manner in which service shall be made. Among other things, it provides that a copy of the summons shall be sent to the defendant by registered mail, and that the defendant's

return receipt shall be filed with the clerk of the court in which the action is pending.

In the instant case respondent admits that a registered letter, containing a copy of the summons, was delivered to his place of business in Johnstown, Penn., but he says that it was not handed to him in person, and that he did not personally sign a receipt therefor. He does not claim that the person who actually subscribed his name to the receipt had no authority so to do.

It is common knowledge that registered mail is not always delivered to the addressee in person, and that he does not always sign his name to the return receipt. Especially is that so when the recipient is engaged in business. Many times it would be impossible to make personal delivery of mail. A construction which would require the personal signature of the defendant to the receipt card would make the statute unworkable, and of little effect. Suppose the defendant could not write, then what? Suppose he was sick or absent from his home or office? Respondent does not claim that he did not receive the summons; he admits that. The statute should receive a sensible construction.

I think that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to defendant to answer on payment of costs.

Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ. All concur, except SEARS, P. J., and CROUCH, J., who dissent and vote for affirmance on the ground that a non-resident owner may not be said to be operating his car within the language of section 285-a of the Highway Law (now section 52 of the Vehicle and Traffic Law) where he has placed the car for repairs in the hands of a bailee, who has sole control of the details of the work, including test driving, and was in such control when the accident happened, even conceding his liability under section 282-e of the Highway Law. (See chapter 10, Laws of 1929, now repealed by section 99, subdivision 1, of chapter 54 of the Laws of 1929.)

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to defendant to answer within twenty days upon payment of the costs of the motion and the costs of this appeal.