THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, Respondent,
    *v.* ADOLPH PFEIFFEN, Defendant, Appellant.

County Court, Kings County, April, 1922.

**Motor vehicles — speed on bridges in New York city — general ordinance limiting speed to twenty miles an hour is applicable as well as the special bridge ordinance.**

The effect of the bridge ordinance which declares that any speed exceeding fifteen miles an hour shall be *prima facie* evidence of a violation of the ordinance was to establish an absolute speed limit on bridge traffic lower than the twenty-mile rate provided by the general speed ordinance of the city of New York, passed two years earlier.

The bridge ordinance, therefore, is not the only one applicable to the operation of motor vehicles on public bridges in the city, and upon proof that defendant was driving over the Williamsburg bridge at the rate of twenty-seven miles an hour, his conviction under the general ordinance will be affirmed.

APPEAL from judgment of conviction.

*Joseph Lonardo*, for appellant.

*John E. Ruston*, district attorney, for people.

TAYLOR, J.   The defendant was convicted in the Traffic Court as a third offender under the general speed ordinance.   The sentence included a recommendation for a revocation of his operator's license.   He appeals upon the ground that the offense having occurred on the Williamsburgh bridge, the bridge ordinance rather than the general speed ordinance applies.   The alleged rate of speed was twenty-seven miles per hour.   The question here involved is whether or not the bridge ordinance is the only ordinance applicable to the operation of motor vehicles on public bridges in the city of New York.   The question is one of legislative intent.   The practical test in determining that intent, in the absence of repeal verbiage, is two-fold:  *Firstly,* are the two ordinances reconcilable, and *secondly,* if reconcilable, would the exclusive application of the last enacted ordinance lead to ineffective. or absurd results.   The general speed ordinance was enacted in 1913.   The bridge ordinance was enacted two years later.   Until passage of the bridge ordinance the general speed ordinance governed traffic on bridges, under the provision making it applicable to any " public place."   It prohibits reckless or endangering speed, and provides that any speed exceeding fifteen miles per hour shall be *prima facie* evidence of violation.   It also establishes an absolute speed limit of twenty miles per hour in built-up sections.   The bridge ordinance contains no reference to the general ordinance, nor does it either expressly or by fair implication vary any of its terms.   It provides:  " No

person shall operate, drive or propel any vehicle, and no owner riding thereon or therein shall cause or permit the same to be driven or propelled upon the Brooklyn Bridge at a rate of speed greater than 8 miles per hour, nor upon any other public bridge in the city at a rate of speed greater than 15 miles per hour." Code of Ordinances of the City of New York, chap. 4, art. 1, § 2. The effect of the bridge ordinance was to establish an absolute speed limit on bridge traffic lower than the twenty-mile rate provided by the general ordinance. That it was intended to be reconciled with rather than to supersede the latter as regards bridge traffic is evidenced by the purely nominal penalty of ten dollars imposed for violation of its provisions. In other words, in making unlawful a lower rate of speed than that prohibited by the general ordinance it was deemed unnecessary to impose stringent penalties. It is, therefore, apparent that the bridge ordinance was designed solely to cover rate of travel on bridges at less than the already existing twenty-mile absolute rate. It arose out of the necessity of enforcing an ultra degree of care where most needed. It is incredible that the municipal legislature could have intended to cut down existing penalties at points where natural necessities of caution demanded the reverse policy. Any consistent and reasonable interpretation of these two ordinances calls for harmony where there is no necessary repugnancy. This is preferable to working an ineffective or absurd result. If the bridge ordinance were exclusively controlling as to bridges the nominal penalty provided for violations would put a premium, so to speak, on bridge speeding. A rate of sixty miles an hour would enjoy the same substantial immunity as a rate of between fifteen and twenty. Regardless of previous convictions the penalty could not be increased. It would mean that although a terrific rate of speed on a city street would be punishable by a substantial fine and imprisonment, such punishment being graded according to the offender's record of previous convictions, the same rate on a public bridge, under even more dangerous conditions, would be punishable by a maximum ten-dollar fine. It is both unwise and illogical to uphold a construction which would work so absurd and ineffective a result. The appellant has cited several cases in support of his contention that the enactment of a special statute repeals an existing general statute in so far as its applicability to the subject of the special statute is concerned. That is too broad a statement of the rule and is not sustained by the authorities cited. In each case the question to be determined is whether the special statute repeals or merely modifies or amplifies the previously existing general statute. That question is one of legislative intent. Each

case must stand the test of a logical application of the conditions which surround it and which impelled the passage of the special statute where the language is reconcilable with continued applicability of the terms of the general statute.

Judgment of conviction affirmed.