**224** People ex rel. Barnes *v.* Warden of Workhouse.

Supreme Court, January, 1925. [Vol. 127

---

The People of the State of New York ex rel. Mary Barnes, Relator, *v.* Warden of Workhouse, Respondent.

Supreme Court, New York County, January 3, 1925.

Crimes — sentence — relator convicted before magistrate remanded for investigation and sentenced by magistrate other than convicting magistrate — convicting magistrate, as required by Inferior Criminal Courts Act, § 98-a, indorsed papers requesting imposition of sentence by other magistrate — relator not illegally convicted — Inferior Criminal Courts Act, § 89, which requires imposition of sentence on female convicted of crime, by magistrate before whom conviction is had, does not limit Inferior Criminal Courts Act, § 98-a.

The relator, who was convicted in a Magistrate's Court in the city of New York, and remanded for three days for investigation, was not illegally convicted on

the ground that she was sentenced by a magistrate other than the one before whom she was convicted, since it appears that the magistrate who sentenced her did so at the request of the magistrate before whom she was convicted, for section 98-a of the Inferior Criminal Courts Act (added by Laws of 1913, chap. 372, as amd. by Laws of 1915, chap. 531) permits the imposition of sentence upon a person convicted before a magistrate as such, or as a Court of Special Sessions, by a magistrate other than the one " before whom such conviction is had " on the request of the convicting magistrate, where it appears that the papers are indorsed showing a request by the convicting magistrate to the succeeding magistrate to impose the sentence.

Section 98-a of the Inferior Criminal Courts Act is neither limited nor restricted by the provisions of section 89 of said statute, which provides that whenever any female is convicted, the magistrate before whom such conviction is had shall impose sentence.

HABEAS CORPUS proceeding in which relator contends that she was illegally convicted.

LYDON, J.   The relator sued out a writ of habeas corpus directed to the warden of the workhouse.   She contends that she was illegally convicted, for the reason that the magistrate by whom she was sentenced was not the same magistrate who found her guilty.   The record shows that the relator was arraigned on October 7, 1924, and upon her plea of not guilty before Magistrate Silberman the matter was adjourned until October 30, 1924, on which date a hearing was had and she was found guilty of the charges preferred against her.   She was thereupon remanded to November 1, 1924, for investigation.   On said November 1, 1924, the then presiding magistrate, to wit, Magistrate Norris, committed her to the workhouse for thirty days.

To analyze the relator's contention, a brief summary of the pertinent sections of the Inferior Criminal Courts Act (Laws of 1910, chap. 659, as amd.) becomes necessary.   Section 88 of the said act provides as follows:

" § 88. Commitment of persons convicted of public intoxication, disorderly conduct or vagrancy.   Whenever any person   *   *   * is convicted   *   *   *   the magistrate, before whom such conviction is had, shall,   *   *   *   impose upon the person so convicted one or other of the penalties herein provided:   *   *   * "

Section 89 of the aforesaid act (as amd. by Laws 1913, chap. 372) also provides in part as follows:

" § 89. Commitments of females convicted of certain offenses. Whenever any female,   *   *   *   is convicted   *   *   *   the magistrate before whom such conviction is had, shall,   *   *   *   impose upon the person so convicted one or other of the penalties herein provided.   *   *   * "

Whether or not the words " before whom such conviction is had," contained in section 88 of the Inferior Criminal Courts Act, limit

**226** People ex rel. Barnes *v.* Warden of Workhouse.

Supreme Court, January, 1925.                [Vol. 127

the later enacted, but more general, provision of section 98-a of the same act, which gives power to another magistrate to impose sentence on the request of the convicting magistrate, presents the crucial question on the writ before me.    Section 98-a provides as follows:

" § 98-a.  Remand pending investigation.    After a conviction or a plea of guilty, a magistrate sitting as such or as a court of special sessions may remand the defendant or admit him to bail for a period not to exceed three days for investigation before pronouncing sentence.    In case of the death or disability of any such magistrate, or upon his request endorsed on the papers, sentence may be imposed by any magistrate presiding in the same court."

The above section was added to the Inferior Criminal Courts Act by chapter 372 of the Laws of 1913, and amended by chapter 531 of the Laws of 1915.    The papers in the case before me were properly and duly indorsed to permit the magistrate presiding in said court to impose sentence.    If it be held that the above-quoted words, to wit, " before whom such conviction is had," prevent a magistrate who convicts of any of the offenses set forth in section 89 from validly requesting another to sentence, then the same result follows as to the same words used in section 88, which covers a still broader field of magistrates' summary or trial jurisdiction.

It is no exaggeration to say that on sections 88 and 89 (*supra*) depend the good order and security of New York city, so numerous are the cases arising thereunder.    It appears that, by virtue of the powers conferred upon the assignment committee of the magistrates and the chief city magistrate by section 51 of the act, the magistrates rotate frequently among the many courts, which are spread over a wide area, these assignments being often of only one week's duration.    Hundreds of thousands of cases are disposed of summarily each year in these courts, and in thousands of the more important of them the remand and request sentence provided by section 98-a is employed, and has been so employed without question for the past ten years, thus receiving a practical construction by a large body of judicial officers.    The constitutionality of section 98-a is apparently not questioned by the relator.    This seems to be settled. (See *People* v. *Papia*, App. Part of Special Sessions, Dec. 4, 1923, citing *People* v. *Brown*, 153 App. Div. 234, 235, and *People ex rel. Horowitz* v. *Hanley*, 106 Misc. 625.)

The point urged by the relator is that, despite the later enactment and amendment of section 98-a as part and parcel of the same act and legislative scheme, the language of section 89 applying to a specific class of cases, shall be deemed to control the later and more general provision, or at least give rise to an implication that the Legislature intended an exception thereto.    If so, then a wider class

of exceptions would be grafted on by par`ty of reasoning with respect to section 88, leaving more of shadow than substance for section 98-a to operate on.

What was the legislative intent? Sections 73 and 75 of the act, as amended, contemplate that each Magistrate's Court shall as far as practicable be a continuous one, and that each shall be as distinct as possible from the other in its work and disposition of work. Section 73 expressly provides that the illness, absence or other inability of any one magistrate shall not interfere with the course of business. Section 98-a appears to be in full harmony with section 92-a, which provides that a magistrate sitting in the same District Court may revoke a suspended sentence, even though he be not the convicting magistrate. The same legislative plan applies, not only to the ordinary District Courts, but to the now numerous special courts, such as the Women's Separate Court, the Men's Night Court, the Traffic Courts, the Homicide Courts, the Municipal Term Courts, and the Family Courts. (See §§ 70, 71, 74, 77 and §§ 95-a of the act, as added by Laws of 1915, chap. 531.)

In considering the workings of the act as to the procedure to be adopted by a magistrate on convicting a person it is to be noted that he may follow any one of several courses. He may at once impose a sentence, under sections 88 and 89, according to the kind of case. *Second*, he may suspend sentence, without putting on probation, as provided by section 92-a (as added by Laws of 1913, chap. 372). *Third*, he may place at once on probation, under section 98. *Fourth*, he may remand for investigation until a future date, under section 98-a. Each alternative gives effect to a different section of the act. If section 98-a is not given a full and broad effect, it is rendered well-nigh meaningless, because it is usually a case of the kind enumerated in sections 88 and 89 that calls for the use of the power to request another to impose sentence. These compose the most important cases disposed of by the magistrates.

If the construction contended for by the relator prevails, here are some of the results that would follow: *First*, there would be a considerable jail delivery, since something like one-third of the women convicted in the Women's Court alone have been sentenced by some magistrate other than the convicting one. Add to this all similar cases under section 88, and the results would be appalling. *Second*, whenever a magistrate's assignment in a given court ended, in place of leaving his cases, then undisposed of, for attention in the tribunal where they belonged, the following procedure would have to be adopted: If a woman, convicted under section 89, the defendant would have to be taken from the special court created exclusively by the Legislature for her kind of case, and brought into a district, **or**

say the Traffic Court, where the magistrate who convicted her might then be sitting, or he would have to leave his court, go to the Women's Separate Court, and interrupt the session of the magistrate there sitting in order properly to sentence the woman. Further, if he should go on vacation, he would have to return within three days to sentence her. (§ 98-a.) If he were absent because of illness, or some emergency, or otherwise became disabled, or resigned, or his term expired, then the woman would never be sentenced.

Similar results would flow under the like wording of section 88, and much of the magistrate's work would be chaotic. The tendency would be for a magistrate, near the end of any assignment in a given court, to impose sentence forthwith on conviction, without adequate remand for investigation, and thus hamper and discourage the beneficent processes of probation, to which all of article VI of the act is devoted. The canons of statutory interpretation are many. (See Curtis' Treatise or Notes on Statutes and Statutory Construction in volume 1 of McKinney's Consol. Laws; 36 Cyc. under the heading of Statutes; Black Interp. of Laws; Dwarris' Potter Statutes.) From among them, however, stands out one cardinal rule: The legislative intent is the primary consideration. (Curtis, *supra,* § 52; *Matter of Armitage* v. *Board of Education,* 122 Misc. 586, 589; *People ex rel. Babcock Co.* v. *Law,* 209 App. Div. 526.)

Every part of a statute should be read, when its purpose is sought. (*People ex rel. Ikeda* v. *Gilchrist,* 122 Misc. 615.) If there is any inconsistency between the older and later provisions of the same statute, the earlier must give way to the later. (*Coykendall* v. *City of Kingston,* 115 Misc. 557, 564.) When the intent is not clear from the language, surrounding circumstances may be considered to ascertain the legislative intent. (*Plummer* v. *Hubbard,* 207 App. Div. 29, 31.) The general purpose, spirit and object of the statute govern. (*Salmon* v. *Rochester & Lake Ontario Water Co.,* 120 Misc. 131, 133.) Statutes relating to procedure are to be construed liberally, with a view to the effective administration of justice. (*Matter of Peters* v. *Sisson,* 102 Misc. 465.) The court will assume that the Legislature, in passing an amendment, intended to effect a material change in the existing law, since otherwise such amendment would be nugatory. (*People ex rel. Sheldon* v. *Board of Appeals of City of New York,* 234 N. Y. 484, 495.) It is presumed that the Legislature did not intend an absurd result. (*People* v. *Pfeiffen,* 118 Misc. 403.) In 36 Cyc. (p. 1143) it is said: " A construction placed upon a statute by inferior courts and long acquiesced in will generally be upheld, especially where the adoption of a different rule would cause great mischief."

Where a statute for a long period of time has been given a practical

interpretation in court procedure, courts will be reluctant to make any revolutionary changes in the interpretation so given and will only do so when the reason and necessity therefor are clear and compelling. (*McCarthy* v. *Woolston*, 210 App. Div. 152.)

A statute is as susceptible of practical construction as a contract. (*City of New York* v. *Union R. Co.*, 206 App. Div. 472, 474.) In the case of *Pouch* v. *Prudential Insurance Co. of America* (204 N. Y. 281) the Court of Appeals, speaking through CHASE, J., approved the following language of LAUGHLIN, J., in the same case (146 App. Div. 612, 616), in which he said: "Where, as here, a statutory provision has received judicial construction, which has been long acquiesced in, I am of opinion that such construction should be adhered to    *    *    *."

Tested by the foregoing canons of judicial interpretation, I am of the opinion that the relator's contention must fail, and the conclusion is irresistible that the intent of the Legislature was to give unlimited scope to section 98-a, and that to restrict or narrow its usefulness would paralyze it, embarrass the administration of justice, hamper probation, and upset the legislative plan embodied in the act in its entirety. The proceeding herein presents a question of great public importance, involving the good order and security of New York city, and the orderly administration of our criminal laws. The court, in reaching its conclusion, was aided immensely by the very able brief submitted by the office of the chief city magistrate as *amicus curiæ*, and due acknowledgment therefor is hereby made.

The writ is dismissed.