In the Matter of the Application of JOHN TROUNSTINE, Respondent, for a Peremptory Writ of Mandamus against J. GABRIEL BRITT et al., as Custodians of Primary Records and as Commissioners of Elections of the City of New York et al., Appellants.

Constitutional law — City Court of city of New York — election of justices — construction of Constitution (Art. 6, § 18; art. 12, § 3) and statutes relative to election and terms of office of justices of City Court — acts of de facto justice cannot be questioned in collateral proceeding.

1. The City Court of the city of New York is not a constitutional court but an inferior court of limited jurisdiction created by the legislature which has power, under the Constitution, to provide for its organization and the election of the justices thereof.

2. Section 18 of article 6 of the State Constitution provides that "Inferior local courts of civil and criminal jurisdiction may be

established by the legislature  *  *  *," and "Except as herein
otherwise provided, all judicial officers shall be elected or appointed
at such time and in such manner as the legislature may direct."
The words "except as herein otherwise provided" must be con-
strued "except as otherwise provided in this constitution" rather
than "except as otherwise provided in this article." As thus con-
strued the section must be read in connection with section 3 of
article 12 of the Constitution, providing that "All elections of city
officers, including  *  *  *  judicial officers of inferior local courts
*  *  *  except to fill vacancies, shall be held  *  *  *  in an odd
numbered year, and the term of every such officer shall expire at
the end of an odd numbered year  *  *  *." The two sections when
read together authorize the legislature to establish inferior local
courts, to provide for the number of justices thereof and the method
of their selection.

3. Upon examination of the several statutes applicable to the City
Court of the city of New York and of section 1206 of the Consolida-
tion Act (L. 1882, ch. 410), which provides, with reference to the
office of justice of the Marine Court, afterwards made applicable to
the City Court, that " Any vacancy shall be filled by appointment
by the governor, and the person so appointed shall hold the office
until the commencement of the political year next succeeding the
first annual election after the happening of the vacancy at which
such officer could be by law elected," together with the provisions
of the Constitution heretofore referred to, *held*, that the legisla-
ture designated a term or duration of office during which the jus-
tices thereof should hold office, and contemplated that such terms
should be consecutive periods of time following each other in
regular order, each commencing and terminating at the times pro-
vided by statute; that in the event of the death of a justice during
his term the term continued but a vacancy in the office existed, and
the governor was authorized to appoint a successor to hold the
office until the commencement of the political year next succeeding
the first annual election at which the vacancy could be filled.
*Held, further*, where the vacancy occurred in the year 1904, that
under the provisions of section 3 of article 12 of the Constitution,
which contains an exception from the requirement that an election
should be held in an odd-numbered year in cases of election to fill
a vacancy, the electors of the city were authorized to vote at the
general election held in November, 1904, for a justice of the City
Court to hold office for the unexpired term of the office held by the
deceased justice, which term would expire December 31, 1909. The
person so elected would enter upon the discharge of the duties of

his office on January 1, 1905, when the appointed justice would vacate the office temporarily occupied by him under appointment by the governor, and a successor should have been elected at the general election in the year 1909, and thus the policy of the law as to "terms" of office and elections in odd-numbered years be preserved and obeyed. *Held, further*, where, because of an erroneous construction of the law governing such court, the certificate of election issued to the justice elected in 1904 was for a term to end December 31, 1914, and the electors of the city of New York omitted in the fall of 1909 to elect a justice for the full term to expire December 31, 1919, that the justice so elected in 1904 has held office under color of title since the expiration of his term in 1909, and that in any event he is a *de facto* officer, and his acts as such cannot be questioned in a collateral proceeding. *Held, further*, that a justice of the City Court should be elected in the fall of 1914 to hold office for the unexpired portion of the term which will expire December 31, 1919, and in the meantime the governor may appoint an incumbent to the office, such appointee to hold until and including December 31, 1914.

*Matter of Trounstine* v. *Britt*, 163 App. Div. 166, reversed.

(Argued June 8, 1914; decided July 14, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 27, 1914, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus requiring the defendants to refrain from in any manner, at the coming primary and general elections in 1914, certifying to the expiration of the term of office of Joseph I. Green, now an incumbent of the office of justice of the City Court of New York, or calling for the election of his successor, and granted said motion.

The facts, so far as material, are stated in the opinion.

*Frank L. Polk, Corporation Counsel* (*Terence Farley* and *E. Crosby Kindleberger* of counsel), for appellants. Elections of other City Court justices in even-numbered years for full ten-year terms, if improper, will not justify the holding of an election in 1914. (*People ex rel. Simp-*

son Co. v. *Kempner*, 154 App. Div. 674; 208 N. Y. 16; *People ex rel. Wogan* v. *Rafferty*, 208 N. Y. 451.) The City Court of the city of New York is an inferior and local court within the meaning of article 12, section 3, of the Constitution. (*Lewkowicz* v. *Q. A. Co.*, 207 N. Y. 290; 154 App. Div. 142; *People* v. *Dooley*, 171 N. Y. 74; *People ex rel. Ward* v. *Scheu*, 167 N. Y. 292.) Justice Green was improperly elected in 1904 for a term of ten years. (*Matter of Markland* v. *Scully*, 203 N.Y. 158; *Koster* v. *Coyne*, 184 N. Y. 494; *People ex rel. Lyon* v. *Wallin*, 141 App. Div. 34; *Matter of Schultes*, 33 App. Div. 524.) Justice Green's term expired on December 31, 1913, and in no event can it be extended until December 31, 1915. (*Koster* v. *Coyne*, 184 N. Y. 494; *People* v. *Fitzgerald*, 180 N. Y. 269; *Matter of Haase*, 88 App. Div. 242; *People ex rel. Smith* v. *Weeks*, 176 N. Y. 194; Const. of N. Y. art. 10, § 2; *People ex rel. Fowler* v. *Bull*, 46 N. Y. 57; *People ex rel. Le Roy* v. *Foley*, 148 N. Y. 677; *People ex rel. Mitchell* v. *Sohmer*, 209 N. Y. 151.)

*Herbert C. Smyth* for intervenors. The election of Mr. Justice Green was properly held in 1904 to fill the vacancy caused by the death of Justice Fitzsimons and such election was a valid election. (L. 1909, ch. 22, § 292; Const. of N. Y. art. 10, § 5; *People ex rel. Ward* v. *Scheu*, 167 N. Y. 292.) Assuming that it applies to this office, the only effect of section 3 of article 12 upon the election of Mr. Justice Green was to end his term December 31, 1913. (*Matter of Markland* v. *Scully*, 203 N. Y. 164; *Koster* v. *Coyne*, 184 N. Y. 494.) If the term of Mr. Justice Green expired by constitutional limitation on December 31, 1913, his successor should have been elected in November, 1913, and upon the failure so to do a vacancy exists and an election to fill it must be held this year. (L. 1909, ch. 22, § 292; L. 1909, ch. 51, § 5; *People ex rel. Mitchell* v. *Sohmer*, 209 N. Y. 151; *People ex rel. Lovett* v. *Randall*, 151 N. Y. 497; *People ex rel. Jackson*

v. *Potter,* 47 N. Y. 375; *People ex rel. Brown* v. *Woodruff,* 32 N. Y. 355.)

*Robert L. Luce, Ellwood M. Rabenold* and *James A. Foley* for Democratic county committee of New York, intervening. The City Court of the city of New York falls within section 18 of article 6 of the Constitution. (*Lewkowicz* v. *Queen Aeroplane Co.,* 207 N. Y. 290; *O'Connor* v. *City of New York,* 191 N. Y. 238, affg. 120 App. Div. 875, and 51 Misc. Rep. 560; *People ex rel. Sinnott* v. *Shea,* 7 Hun, 303.) Section 3 of article 12 of the Constitution has no application to the City Court of the city of New York. (*People ex rel. Hatfield* v. *Comstock,* 78 N. Y. 356; *People ex rel. Ward* v. *Scheu,* 167 N. Y. 292; *People* v. *Dooley,* 171 N. Y. 74; *Matter of Markland* v. *Scully,* 203 N. Y. 158; *People ex rel. Stupp* v. *Kent,* 83 App. Div. 554; *People ex rel. Howard* v. *Bd. of Suprs.,* 42 App. Div. 510; 160 N. Y. 687.) The Constitution having conferred upon the legislature in section 18 of article 6 the authority to direct the times at which judicial officers should be elected, such as City Court justices concededly are, did not intend to take, nor has it taken, from the legislature this authority by anything that is said or provided in section 3 of article 12. (*People ex rel. Swift* v. *Luce,* 204 N. Y. 478; *Lewkowicz* v. *Queen Aeroplane Co.,* 207 N. Y. 290; *De Leyer* v. *Britt,* 157 App. Div. 586; *Worthington* v. *L. G. & A. Co.,* 164 N. Y. 81.) It has been the custom in the past to elect justices of the City Court in even-numbered years, and the practical construction of a statute by those for whom the law was enacted, or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity. (*Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405.) In any event, the successor of Mr. Justice Green must be elected at the general election in

November, 1914. (*People ex rel. Sinnott* v. *Shea*, 7 Hun, 303.)

*Frederick C. Tanner* for Republican county committee of New York, intervening. The City Court of the city of New York is an inferior local court and comes within article 12, section 3, of the Constitution of the state of New York. (*Lewkowicz* v. *Q. A. Co.*, 207 N. Y. 290; 154 App. Div. 142; *People ex rel. Ward* v. *Scheu*, 167 N. Y. 292; *Matter of Schultes*, 33 App. Div. 524; *Koster* v. *Coyne*, 184 N. Y. 494; *Matter of Markland* v. *Scully*, 203 N. Y. 158; *People ex rel. Wogan* v. *Rafferty*, 208 N. Y. 451; *People ex rel. Simpson & Co.* v. *Kempner*, 154 App. Div. 674; 208 N. Y. 16.) The term of Mr. Justice Green cannot be extended until December 31, 1915. (*Koster* v. *Coyne*, 184 N. Y. 494; *People* v. *Fitzgerald*, 180 N. Y. 269; *People ex rel. Smith* v. *Weeks*, 176 N. Y. 194; *Matter of Haase*, 88 App. Div. 242.) The court should declare against an election to be held in 1914 for the full term of ten years as being in contravention both of the Constitution and the decisions, and leave the question of filling a vacancy for the term intervening before an election in an odd-numbered year to the appointive power. (*Lewkowicz* v. *Q. A. Co.*, 207 N. Y. 290.)

*Leonard M. Wallstein* for National Progressive county committee of New York, intervening. By the first and last sentences of section 3 of article 12 of the Constitution that section is expressly made applicable to "justices of inferior local courts," and it is settled that the City Court of New York is an inferior local court. It would seem clear, therefore, that there can be no election of a City Court judge in the year 1914. (*Lewkowicz* v. *Queen Aeroplane Co.*, 207 N. Y. 290; L. 1882, ch. 410, § 1206; *People ex rel. Ward* v. *Scheu*, 167 N. Y. 293.) The election of Mr. Justice Green in 1904 was not an election to fill a vacancy within the exception contained in article

12, section 3, so that his successor may also be elected in an even-numbered year. (*People ex rel. Ward* v. *Scheu,* 167 N. Y. 293; *Matter of Markland* v. *Scully,* 203 N. Y. 158.)

*Emanuel Van Dernoot* for respondent. No election of a successor to the office of justice of the City Court now held by Mr. Justice Green can be held in an even-numbered year, and his term is extended to December 31, 1915. (*Lewkowicz* v. *Queen Aeroplane Co.,* 207 N. Y. 290; *People* v. *Dooley,* 171 N. Y. 89; *People ex rel. Ward* v. *Scheu,* 167 N. Y. 296; *Matter of Markland* v. *Scully,* 203 N. Y. 164.)

HOGAN, J. The question presented by this appeal involves the official status of justices of the City Court of the city of New York holding positions by choice of the electors of said city and exercising the functions of judicial officers. In view of the public importance of the question presented, we concluded to hear and determine the appeal notwithstanding the debatable propriety of the practice followed.

This proceeding was commenced to obtain a peremptory writ of mandamus requiring the board of elections and the city clerk of the city of New York to refrain from transmitting a public notice of the primary and general elections to be held in 1914 containing a statement that candidates for justice of the City Court of the city of New York would be selected and voted thereat or that there would be any election for a justice of that court in November, 1914, to succeed one Joseph I. Green, a justice of said court.

The application was denied at Special Term. Upon appeal the Appellate Division determined that the election of Justice Green in 1904 was invalid and granted the application prayed for.

At a general election held in the city of New York in 1899 James M. Fitzsimmons was duly elected a justice of

the City Court of the city of New York for a term of ten years, which term expired December 31st, 1909. Justice Fitzsimmons entered upon the discharge of the duties of the office January 1st, 1900. He died in 1904, and on July 17th, 1904, the governor appointed John Palmieri to fill the office. In the fall of 1904 Joseph I. Green was nominated by one of the political parties to the office of justice of the City Court to succeed to the vacancy caused by the death of Justice Fitzsimmons, and, having received the greater number of votes cast for the office, Mr. Green was declared elected for a full term of ten years to expire December 31st, 1914. Since that time he has discharged the duties of the office of justice of the City Court.

On behalf of the moving party it is contended that an election of a justice of the City Court of the city of New York cannot be had in an even-numbered year. (Constitution, article 12, section 3.) On behalf of Justice Green it is asserted that the provision of the Constitution cited is limited to constitutional officers, and that election to the office of justice of the City Court may be held at such time as the legislature shall direct pursuant to section 18 of article 6 of the Constitution.

That the City Court of the city of New York is not a constitutional court but an inferior court of limited jurisdiction created by the legislature has been decided. (*O'Connor* v. *City of New York*, 191 N. Y. 238.) A determination of the question as to the application of article 12, section 3, of the Constitution to the justices of the City Court does not involve consideration of the several Constitutions preceding the present one. The power of the legislature to provide for the organization of the City Court and the election of the justices thereof under the earlier or present Constitutions does not admit of doubt.

Section 18 of article 6 of the Constitution, designated' as the Judiciary article, is as follows:

"§ 18. Inferior Local Courts. Inferior local courts of civil and criminal jurisdiction may be established by the

legislature, but no inferior local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct."

It was argued by counsel that the latter sentence of the section " *Except as herein otherwise provided*, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct," and the absence of any provision in the Judiciary article (Article 6) *otherwise* providing for the time and manner of the election of judicial officers, conferred authority upon the legislature to provide whether the justices of the City Court should be elected or appointed and the times of such election and manner of such appointment as that body should determine.

Had the statutes creating the court now known as the City Court of the city of New York provided for the appointment of the justices thereof and the manner of such appointments, the arguments of counsel would be forceful as the provisions of section 3 of article 12 of the Constitution apply only to elective officers. The words " except as herein otherwise provided " did not operate to exclude the application of other provisions of the Constitution having reference to the subject-matter contained in the Judiciary article. On the contrary, the words quoted must be construed "except as otherwise provided in this Constitution" rather than "except as otherwise provided in this article," language used in section 17 of the same article. (*Matter of Rapid Transit R. R. Commissioners*, 147 N. Y. 260, 266.)

Applying such rule of construction, article 6, section 18, must be read in connection with section 3 of article 12 of the Constitution, which provides as follows:

"Election of City Officers, When to Be Held; Extension and Abridgment of Terms. § 3. All elections of city officers, including supervisors and judicial officers of inferior local courts, elected in any city or part of a city, and of county officers elected in the counties of New York and Kings, and in all counties whose boundaries are the same as those of a city, except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd numbered year, and the term of every such officer shall expire at the end of an odd numbered year. The terms of office of all such officers elected before the first day of January, 1895, whose successors have not then been elected, which under existing laws would expire with an even numbered year, or in an odd numbered year and before the end thereof, are extended to and including the last day of December next following the time when such terms would otherwise expire; the terms of office of all such officers, which under existing laws would expire in an even numbered year, and before the end thereof, are abridged so as to expire at the end of the preceding year. This section shall not apply to any city of the third class, or to elections of any judicial officer, except judges and justices of inferior local courts."

This section of the Constitution was the subject of extended debate in the Constitutional Convention of 1894. At and prior to that time in a number of the cities of the state, city officers were elected at times other than at the general election, and as was said by Judge HAIGHT in *Matter of Markland* v. *Scully* (203 N. Y. 158, 163): "The purpose of the last section (Section 3, article 12) of the Constitution was to separate the election of city officers from that of state officers, so that they would not occur in the same year; and inasmuch as state officers were elected in an even numbered year, it was arranged that the city officers should be elected in an odd numbered year."

The two sections (Section 18, article 6; section 3, article

12) when read together authorize the legislature to establish inferior local courts; to provide for the number of justices thereof and the method of their selection by the people. Had the statute provided that the justices of the City Court should be appointed, authority to provide the manner of appointment and the terms of office would remain with the legislature. But as the statute provided that the justices should be elected, any provision thereof in conflict with the requirement that such election (except to fill vacancies) must be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer elected should expire at the end of an odd-numbered year would be invalid.

The election of justices of the City Court *to fill vacancies* was excepted from the provisions of section 3, article 12 of the Constitution, and such elections were not inhibited in even-numbered years. This exception was embodied in the Constitution to render harmonious the laws which had been part of the statutes of this state for many years, and in accord with the policy that elective offices shall be created for fixed terms unless otherwise provided for, that the incumbent in such office or in the event of a vacancy therein, his successor elected thereto should hold office only for the unexpired portion of the term fixed by law. As an incumbent of an office cannot by any act upon his part create a vacancy in an office *after* the expiration of the term of office, provision was made by the Revised Statutes pursuant to the power conferred upon the legislature by section 8, article 10 of the Constitution, for the creation of vacancies during a term of office now embodied in section 30 of the Public Officers Law, (Cons. Laws, ch. 47), and which provides that "Every office shall be vacant upon the happening of either of the following events *before the expiration of the term thereof.*" One event specified is the death of the incumbent.

Section 5 of the Public Officers Law, also taken from the Revised Statutes, declares the same policy in the language following:

"§ 5. Holding Over after Expiration of Term.— Every officer *except a judicial officer*, a notary public, a commissioner of deeds and an officer whose term is fixed by the constitution, having duly entered on the duties of his office, shall, unless the office shall terminate or be abolished, hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; but after the expiration of such term, the office shall be deemed vacant for the purpose of choosing his successor. An officer so holding over for one or more entire terms, shall, for the purpose of choosing his successor, be regarded as having been newly chosen for such terms. An appointment for a term shortened by reason of a predecessor holding over, shall be for the residue of the term only."

That the legislature provided a fixed *term* of office for justices of the City Court is manifest by reference to the several statutes applicable thereto.

The City Court of New York succeeded the Marine Court of the city of New York (Laws of 1883, chapter 26) which latter court was the successor of the Court of Justices of the Peace and Assistant Justices in and for the city and county of New York. (Laws of 1807, chapter 139; Laws of 1819, chapter 71.)

By chapter 389, Laws of 1852, three justices of the Marine Court were to be elected at the general election held in November, 1852, and to be so classified that the terms of office of each of said justices would commence on the second Tuesday of May, 1853, and expire, one on the 31st day of December, 1855, one on the 31st day of December, 1857, and one on the 31st day of December, 1859, and thereafter the terms of office should be six years, one justice to be elected at the expiration of every

two years. By chapter 582 of the Laws of 1870, the jurisdiction of the Marine Court was enlarged; the number of justices of the court increased from three to six and the term of office fixed at six years. The three justices in office were to continue therein until the expiration of the terms for which they were respectively elected. The three additional justices were to be elected at a general election in May, 1870, and take office July 1st, 1870, one to hold office to and including December 31st, 1873, one until and including December 31st, 1875, and the third one to and including the 31st day of December, 1877. By the provisions of the Consolidation Act (Laws of 1882, chapter 410, section 1206) the Marine Court was continued, the terms of the justices fixed at six years and two justices were to be elected at the general election to be held in the year 1881, and the same number at a general election to be held in each second year thereafter. By chapter 26, Laws of 1883, the name of the Marine Court of the city of New York was changed to the City Court of the city of New York, and all laws relating to the Marine Court and justices thereof were continued in force and remained applicable to the City Court. The new charter of the city of New York (Laws of 1897, chapter 378, sections 1345, 1346) continued the City Court, provided that the justices then in office should hold office until the expiration of their respective terms, but that their successors should be elected for and hold office for the period of ten years.

The several laws to which attention has been called disclose that the legislature designated a *term* or duration of office during which the justices mentioned as provided by section 3, article 10 of the Constitution should hold office, and contemplated that such *terms* should be consecutive periods of time following each other in regular order, each commencing and terminating at the times provided by statute. The expression *term of office* was used in every statute except the statute of 1897,

28

where the language " be elected for and hold office for a *period* of ten years " was used, which language must be construed to be synonymous with the phrase "*for a term of ten years.*" (*People ex rel. Healy* v. *Leask,* 67 N. Y. 521.)

This conclusion is supported by section 3 of article 12 of the Constitution under consideration in this case. That section, after providing for the election of city officers including judicial officers of inferior local courts, provides that the *term* of every such officer shall expire at the end of an odd-numbered year. To render the section harmonious, provision was made therein that " the terms of office " of all such officers elected before January 1, 1895, " whose successors have not then been elected, which under existing laws would expire with an even numbered year, or in an odd numbered year and before the end thereof, are extended to and including the last day of December next following the time when such *terms* would otherwise expire; the *terms of office* of all such officers, which under existing laws would expire in an even numbered year, and before the end thereof, are abridged so as to expire at the end of the preceding year."

To summarize, we find a court of inferior local jurisdiction created by statute wherein provision was made for the election of the justices thereof with stated terms of office. As a vacancy in the office of a justice by death, resignation or removal from the state was to be anticipated, it was necessary that provision should be made for some authority to fill vacancies occurring during the *term* thus established. This the legislature undertook to do in the Consolidation Act of 1882 (L. 1882, ch. 410), which provided with reference to the office of justice of the Marine Court, afterwards made applicable to the City Court:

" Any vacancy shall be filled by appointment by the governor, and the person so appointed shall hold the

office until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected." (Section 1206.)

The Appellate Division held that under that statute the legislature expressed the intention that elections for justices of the City Court were to be held in an odd-numbered year, and that prior to the Constitution of 1895 the appointee of the governor would continue to hold office until the commencement of the political year next succeeding the first annual election in an odd-numbered year; secondly, that subsequent to the Constitution of 1895 there could be no valid election of a justice of the City Court in an even-numbered year, and, therefore, all votes cast for a justice in such year were void and ineffective. We do not concur with the latter conclusion of the Appellate Division. We have demonstrated that a *term of office* was established by law. In the event of the death of a justice during his term, as in the case at bar, the term continued but a vacancy in the office existed. The term of office prescribed by law was not affected or changed by reason of such vacancy, neither did the statutes relating to the court provide, as does the Constitution with reference to judges of the Court of Appeals, justices of the Supreme Court, county judges and surrogates, that an election to fill a vacancy "shall be held for the full term." The omission of the legislature to so provide discloses an intention that elections of justices of the City Court should be continued to be held in odd-numbered years. The death of Justice Fitzsimmons in 1904 created a vacancy in the office theretofore held by him. The governor was authorized to appoint Mr. Palmieri to perform the duties of the office of justice of the City Court until the commencement of the political year next succeeding the first annual election at which the vacancy could be filled by election. (Public Officers Law, section 38; Constitution, article 10, section 5.)

Under the provisions of article 12, section 3, of the Constitution which contained an exception from the requirement that an election should be held in an odd-numbered year, in cases of election to fill a vacancy, the electors of the city were authorized to vote at the general election held in November, 1904, for a justice of the City Court to hold office for the unexpired term of the office held by Justice Fitzsimmons, which term would expire December 31st, 1909. The person so elected (assuming such election had been held) would enter upon a discharge of the duties of the office on January 1st, 1905, when the appointed justice would vacate the office temporarily occupied by him under appointment by the governor. A successor would be elected at the general election in the year 1909 and thus the policy of the law as to "terms" of office and elections in odd-numbered years be preserved and obeyed.

Should the decision of the Appellate Division prevail and the opinion written thereat be followed a contrary result would ensue. It was held by that court that the vacancy caused by the death of Justice Fitzimmons having been filled by the governor in the appointment of Mr. Palmieri, Justice Green was elected as successor to Justice Palmieri. Such construction would result in lack of harmony in the administration of the court and too frequently result in a renewal of the question here presented. The construction adopted by us will not only adjust the status of the justices of the City Court, but preserve intact the offices created, avoid the danger of vacancies therein, meet the requirements of the Constitution and preserve the right of the people in case of elective officers to select their servants in compliance with the theory and language of the Constitution.

The views expressed lead to the conclusion that the election of Justice Green in the fall of 1904 was a valid election, and he was entitled under such election to hold office until and including December 31st, 1909. The cer-

tificate of election issued to him was for a term to end December 31st, 1914, and he has held office under color of title since the expiration of the term in 1909. His acts thereunder cannot be questioned in a collateral proceeding like the present one. He is in any event a *de facto* officer. (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185, 212.)

. In the fall of 1909 the electors of the city of New York omitted to elect a justice of the City Court for the full term to expire December 31st, 1919, because of an erroneous construction of the law governing said court. A justice of the City Court should be elected in the fall of 1914 to hold office for the unexpired portion of the term which will expire December 31st, 1919. In the meantime, if so advised, the governor may appoint an incumbent to the office, such appointee to hold until and including December 31st, 1914.

The order of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs.

WILLARD BARTLETT, Ch. J. (concurring in result). By section 1346 of the Greater New York Charter (Chap. 378 of the Laws of 1897, as amended by chap. 466 of the Laws of 1901) it was provided that the successors of the justices of the City Court then in office should be elected for ten years. The precise language of the section is: "The Justices of said City Court in office when this act shall take effect shall continue to hold office until the expiration of their respective terms; but the successors of said justices shall be elected for and hold office for the period of ten years."

In *People ex rel. Weller* v. *Townsend* (102 N. Y. 430) it was held that similar language in the Constitution gave a surrogate or a county judge elected after the happening of a vacancy the full term prescribed by the Constitution. The language there under consideration was: "The existing County Courts are continued, and the

judges thereof in office at the adoption of this article shall hold their offices until the expiration of their respective terms.  Their successors shall be chosen by the electors of the counties for the term of six years." (Const. 1846, as amended, art. 6, section 15.)

The language of the Greater New York charter is so similar to that of the Constitution construed in the *Townsend* case that it should be held to have the same effect.  But section 3 of article XII of the Constitution prescribes that all elections except to fill vacancies of city officers, including judicial officers of inferior local courts, shall be held in an odd-numbered year, and that the term of every such officer shall expire with the expiration of an odd-numbered year.  If, therefore, the legislature were permitted to prescribe that vacancies in the offices mentioned should be filled for a full term it is apparent that if the vacancies occurred in an even-numbered year the term of the newly-elected incumbent would expire in an even-numbered year and thereafter elections for those offices be regularly and systematically held in even-numbered years.  After the lapse of a number of years it might happen that a majority of the local officers would be elected in even-numbered years and the whole constitutional scheme for divorcing local from general elections rendered nugatory  It follows, therefore, as it seems to me, that the act of the legislature (Section 1346 of the Greater New York charter) cannot be upheld in its entirety (*Matter of Markland* v. *Scully*, 203 N. Y. 158); although by express provision of the Constitution a single election for a vacancy only can be held in an even-numbered year.  Mr. Justice Green, having been properly elected in 1904 to fill a vacancy, the only question is how long his term ran.  In the *Markland Case* (*supra*) we held that the statute then before the court was void.  It is not necessary to go so far in the present case.  The statute under consideration in the *Markland* case violated the Constitu-

tion in several respects, while here section 1346 of the charter is in conflict with the Constitution only where it makes the term of a justice of the City Court, elected in an even-numbered year, ten years.    It seems to me that we can give effect to the charter provision to the extent to which it is not in conflict with the Constitution — that is to say, if the vacancy occurs in an odd-numbered year, the person elected to fill the vacancy may hold for ten years; if in an even-numbered year, then only for nine years.    But whether the statute is to be thus construed or to be held wholly invalid, the result is the same as far as the disposition of the present case is concerned.    In either event Judge Green is only a *de facto* officer, and the office is vacant for the purpose of being filled by election.    (Election Law [Cons. Laws, ch. 17], § 42.)    If Judge Green's election for the full term of ten years were valid, certainly his term would expire with the close of this year, and the people would be entitled to elect his successor.    It is a little difficult to see how the fact that his present incumbency of the office is not justified by law can deprive the people of the privilege of electing his successor, as his only claim is that he was elected for ten years, and that period certainly expires this year.

These views lead to the same conclusion as that reached by my brother HOGAN, although by a somewhat different route.

WERNER, HISCOCK, COLLIN and CARDOZO, JJ., concur with HOGAN, J.; MILLER, J., concurs with WILLARD BARTLETT, Ch. J.

Order reversed, etc.