J. H. Heard, County Judge, etc., v. John Moore.*

(*Knoxville.* September Term, 1926.)

Opinion filed, November 20, 1926.

**CONTESTED ELECTION. County judge. Qualification of candidate.**

Acts 1893, chapter 51, creating the office of county judge (of Sequatchie county), providing "that there shall be elected by the qualified voters (of said county) a person learned in the law, thirty years of age, to be styled county judge," to hold the office for eight years, to whom jurisdiction is given over matters generally pertaining to such office, and other duties devolving upon the chairman of such court; **held** that the words, "learned in the law" are not mandatory, and that it is not meant "a licensed attorney;" that the requirement that the county judge should be "learned in the law" was intended as a direction to the voters and that a majority of the ballots settles the question. (Post, p. 568.)

Cases cited: Little v. State, 75 Tex., 620; Jamieson v. Wiggin, 12 S. Dak., 16; State v. Schmahl, 125 Minn., 533.

Acts cited: Acts 1893, ch. 51.

---

*Headnote 1. Judges, 33 C. J., section 27 (Anno.).

---

FROM SEQUATCHIE.

---

Appealed from Chancery Court of Hamilton County, the cause having been transferred for hearing.—Hon. W. B. Garvin, Chancellor.

Brown & Spurlock, for plaintiff.

Sizer, Chambliss & Sizer and C. C. Moore, for defendant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This cause is in the nature of a contest over the office of county judge for Sequatchie county.

In the August election, 1926, the incumbent, complainant Heard, was defeated for said office by the defendant Moore.

The bill was filed by the complainant for the purpose of enjoining the defendant from interfering with him in the exercise of the powers and duties of said office, it being averred in the bill that the defendant was not a licensed attorney at law, and was not, therefore, qualified to hold the office.

The question for decision is whether a person is eligible to the office of county judge for Sequatchie county who is not a licensed attorney. The cause was transferred to the chancery court of Hamilton county for hearing.

The office involved was created by chapter 51 of the Acts of 1893, its pertinent provisions being as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That there shall be elected by the qualified voters of the county of Sequatchie, a person learned in the law, thirty years of age, to be styled county judge, who shall hold his office for eight years from the date of his commission.

"Section 3. Be it further enacted, That all jurisdiction and powers of the present county courts over administrators, executors, guardians, wards, trustees, wills, dowers, and petitions for sale or divisions of lands, be, and the same are herby, given to the county court to be held by the county judge, and all other questions over which the

chairman of the county court now has jurisdiction, and all other duties now devolving upon the chairman of said county court, are hereby transferred to county judge.''

For the complainant it is contended that the term ''learned in the law'' has a well-defined meaning, viz: ''a licensed attorney.''

This is denied by the defandant, who insists that the term, as used, was only a direction to the voters, and that the majority of the ballots settled the question.

The chancellor was of the opinion that the words ''learned in the law'' were mandatory, and were equivalent to or meant ''a licensed attorney.'' He, thereupon, entered an order making the temporary injunction prepetual.

The defendant has appealed, and, by proper assignments, questions the correctness of the chancellor's decree.

We have been referred by counsel to three cases dealing with this question.

The first case is *Little* v. *The State,* 75 Tex., 620, where the court construed a provision of the State Constitution providing that ''there shall be elected in each county by the qualified voters a county judge, who shall be well informed in the law of the State,'' etc. In the course of the opinion the court said:

''Nevertheless, we are of opinion that it was never intended to fix a ground of disqualification to hold office by terms so indefinite as the phrase 'well informed in the law.' It is apparent that county judges were not required to be lawyers, because that qualification is expressly provided by the Constitution for judges of the higher courts.

In this State more than half the county judges who have been elected since the Constitution was adopted have been persons who have never devoted a day to the study of the law, and probably there have been more lawyers elected to the position than was expected when the Constitution was framed. Was it contemplated that these lay judges should be held disqualified because they could not swear that they were well informed in the law, or could not define a mandamus or an injunction? These were the questions asked of relator, and it was not error to refuse to allow them to be answered. If it had been intended to inquire into the extent of the legal learning of a county judge in order to determine his qualifications to hold the office, it would seem some examining board or committee would have been provided for to decide the question. It was certainly never contemplated that a jury should determine an aspirant's qualifications upon listening to his examination upon questions of law. We think the requirement that the county judge should be well informed in the law was intended as a direction to the voters, and that a majority of the ballots settles the question.''

The second case, *Jamieson* v. *Wiggin,* 12 S. Dak., 16, involved the construction of a constitutional provision requiring that judges of the State should be ''learned in the law.'' The court, in its opinion, said:

''The phrase, 'learned in the law,' will be found in several State Constitutions. It is alliterative, euphonious, vague and indefinite. A person who has never been admitted to the bar may be profoundly learned in the law, while one who has been admitted may be as profoundly ignorant of its principles. Between such a law-

yer as Ambassador Choate and 'Squire Tompkins, of Tompkins Corners,' there are as many degrees of learning in the law as there are members of the bar in the United States. Where, then, shall the line be drawn in determining the qualification of judges under this provision of the Constitution? When and by whom shall the question be determined? It was certainly not contemplated that the educational qualifications of a candidate for supreme judge should be determined by a referee or jury in a contested election case, as might be the result were we to hold that his learning in the law is a question of fact, to be ascertained by an examination subsequent to his election. We think the phrase must be construed as either requiring admission to the bar, or as a direction to the voters, their decision being conclusive.''

With respect to the Texas case, hereinbefore cited, the South Dakota Court, after citing and quoting from the opinion therein, says:

''There is considerable force in the contention that if the framers of the Constitution had intended to require admission to the bar as a qualification they would have employed more apt language to express such intention. On the other hand, it may be argued that the practical effect of the view taken by the Texas Court is to practically annul the clause in question. There being no satisfactory middle ground between these views which one shall be adopted?''

The court further said:

''The phrase was inserted for a purpose. It clearly indicates an intention to prescribe some sort of an educational qualification, and should be given some practical effect. Since the State was admitted, all political parties

have acted upon the assumption that candidates for the office of Supreme or Circuit Judge should be members of the bar. It would certainly surprise the legal profession and people generally to announce that any person not a lawyer might hold either of these offices. Under the Constitution there can be no distinction between Supreme, Circuit, or County Judges, with respect to this qualification; and we are constrained to hold that no one is eligible to either position who is not, when elected, either admitted, or entitled to be admitted, without examination, to practice as an attorney-at-law in this State. In other words, the fact that the candidate is learned in the law must have been ascertained by a competent tribunal prior to the election; the only and conclusive evidence of such fact being an admission to the bar by a court of this or some other jurisdiction authorized to license persons to practice as attorneys-at-law.''

The third case, *State ex rel.* v. *Schmahl*, 125 Minn., 533, involved the construction of a constitutional provision similar to that considered in *Jamieson* v. *Wiggin*, supra, and the court, in a very few lines, simply followed the South Dakota case.

Thus it appears that all of these courts considered the phrase ''learned in the law'' vague, indefinite and uncertain, but the two latter courts rather arbitrarily construed it to mean an ''attorney at law,'' upon the ground that it was a constitutional mandate clearly indicating an intention to prescribe some sort of an educational qualification, and that it was their duty to give it some practical effect.

Counsel for the complainant insist that the term ''learned in the law'' was well understood at the common

law, it being a requirement that judges should be licensed attorneys, and quote from Select Essays on Anglo-American Legal History, to the effect that under the English Law to become a judge one had to study law five years before being admitted to the bar, and practice law sixteen years before he could take the degree of sergeant-at-law, and the judges were selected only from these sergeants. If this is a test as to what is meant by being "learned in the law" then it has never been adopted in this country, for no such requirements have ever prevailed here.

In view of the foregoing discussions of the question involved, it can hardly be said that the term "learned in the law" has a well understood and defined meaning that the Legislature had in mind in the passage of the act creating the office of county judge for Sequatchie county.

We are of the opinion that the requirement that the county judge should be "learned in the law" was intended as a direction to the voters, as was held by the Supreme Court of Texas, and that a majority of the ballots settled the question. Our reasons for so holding are as follows:

1. The Legislature could have as well used the words "licensed attorney," if it were intended that the county judge should be such, and thus have made the requirement certain and unquestionable. Furthermore, a review of the many acts creating the office of county judge in the various counties of the State discloses that in many of them, including Shelby, Hamilton and Knox, no legal qualification was prescribed, and no good reason occurs to us as to why a county judge for Sequatchie county should

be a licensed attorney while no such qualification is exacted of the county judge for Shelby, and other counties.

In some of the acts, for example chapter 18 of the Acts of 1905, creating the office of county judge for Roane county, no legal qualification is required, except that in case of a vacancy a temporary appointment of one "learned in the law" shall be made by the county court.

The direction as to selecting officers of legal knowledge was, in some instances, contained in acts creating the office in large counties, in others it was not; the same was true with respect to small counties, and, occasionally, it would provide no legal requirement for the regular judge, but prescribe such qualification for one appointed to fill a vacancy.

In view of this want of uniformity, we are of the opinion that the Legislature did not entertain the idea that only "a licensed attorney" was qualified for the office of county judge.

2. It is clear to us that it was never provided or contemplated that a chairman of the county court should be a licensed attorney. Under this act the powers and jurisdiction of a county judge are the same as those of a county chairman, and we are unable to see why the Legislature should require one and not the other to be a licensed attorney.

3. A county judge is both a judicial and ministerial officer. In many of the smaller counties his strictly judicial duties are inconsequential, while his duties as financial agent of the county are extensive and varied, and, from a practical standpoint, it is often more important that he possess business qualifications than to be a licensed attorney.

4. It was stated at the bar when this cause was argued that one or more of the smaller counties in the State do not have a lawyer within their bounds, and several counties have only one or two resident lawyers.

To require a county judge to be a licensed attorney would likely result in depriving a few of the counties of such judicial officer, and for that reason we are loath to give the term a construction that would produce such a result where doubt exists as to its meaning.

5. In many of the smaller counties the salary is so small that it would be difficult, if not impossible, to sesure the services of one literally learned in the law.

The act under consideration only provides for a salary of $250 per annum.

6. The modern tendency is to commit to the people the power of choosing their local officers.

Here the complainant was an attorney, and had served for eight years as county judge. On the other hand, the defendant was not a licensed attorney, but had held other important county offices. Both were well known to the electorate, and the people of the county, who were most vitally affected, considered the defendant the best qualified for the office, and we are not disposed to so construe the uncertain provision of the act here involved as to deprive them of that right.

7. Our attention has been directed to instances in which county judges, not licensed attorneys, have been chosen to that office under acts requiring the incumbent to be "learned in the law," and to construe that term to mean a licensed attorney would result in disqualifying some office holders from filling the positions to which they have been chosen by the people.

For the foregoing reasons, and for others that could be mentioned, we hold that the defendant, although not a licensed attorney, was eligible to the office of county judge for Sequatchie county, and the decree of the chancellor holding the contrary will be reversed and the bill of the complainant dismissed.