446 P.2d 445

STATE of New Mexico ex rel. Ventura CHAVEZ, Adelicio Moya, Wilfredo Ernest Sedillo, William Higgs, Reies Lopez Tijerina, Jose Alfredo Maestas, Roger Anderson and Preston Monongye, Petitioners,

v.

Ernestine D. EVANS, Secretary of State of the State of New Mexico, Respondent.

No. 8746.

Supreme Court of New Mexico.

Oct. 25, 1968.

Jonathan B. Sutin, Albuquerque, for petitioners.

Boston E. Witt, Atty. Gen., Gary O. O'Dowd, Donald W. Miller, Larry N. Smith, Asst. Attys. Gen., Santa Fe, for respondent.

## OPINION

PER CURIAM.

Petitioners, eight in number, seek mandamus to require respondent to certify their names to the various county clerks for the offices to which they were nominated by the People's Constitutional Party. The remaining candidates of that party have already been certified, so we are concerned only with the eight.

There is no question present concerning compliance with the law in the nominating process, timeliness of the filing of the certificates of nomination, or relative to the sufficiency of the certificates. The initial problem is what duty devolved upon respondent upon receipt of the certificate containing petitioners' names. The statute (§ 3-3-2, N.M.S.A. 1953), in effect, merely provides that the secretary of state shall certify the names, the office, and the political party of the individuals to the county clerk of each county. Initially, it was urged that respondent had no discretion whatsoever under the above statute, but we believe it is now conceded by them that the issuance of the writ lies within the sound discretion of the court and that, generally, such writs are not issued unless some proper end is to be accomplished. Thus, if it clearly appears that any of the candidates could not qualify for the offices which they seek, they would not argue that the writ should be granted. In this stand, they accept the rule as stated in Application of Lindgren, 232 N.Y. 59, 133 N.E. 353 (1921). However, of course, petitioners argue that all of them are qualified for the respective offices, and that therefore the writ should issue.

In accordance with our decisional law (compare, City Commission of Albuquerque v. State, 75 N.M. 438, 405 P.2d 924 (1965) ), we therefore proceed to the consideration of the qualifications of the various petitioners. Before doing so, however, we would note that our decision in State ex rel. Shepard v. Mechem, 56 N.M. 762, 250 P.2d 897 (1952), is controlling as against respondent's contention that a relator in a mandamus action cannot question the constitutionality of a statute. It may be done in a proper case and we feel that it is proper here.

Petitioners Ventura Chavez and Adelicio Moya were nominated as candidates for President and Vice-President of the United States by the party. Respondent refused to certify their names because two of the presidential electors nominated by the party were not qualified to act as such electors. Under our statutes, candidates for President and Vice-President appear together on the ballot and on the voting machines, and the voter casts his ballot

directly for such candidates. The names of the presidential electors do not appear on the ballot, although they are chosen by the party convention and certified to the secretary of state who records their names (§ 3–10–1, N.M.S.A. 1953). There is a provision for filling vacancies in the office of presidential electors which does not specifically mention the present situation. However, it is implicit in this instance that the selection of unqualified persons is tantamount to failure to select, which is specifically mentioned in the statute (see, § 3–10–4, N.M.S.A. 1953). The refusal to certify was erroneous. Petitioners Chavez and Moya must be certified.

Petitioners Sedillo and Higgs are candidates of the aforementioned party for United States Representative in Congress, New Mexico Districts 2 and 1.

Section 3–18–3, N.M.S.A. 1953, so far as pertinent, reads:

"Each candidate for the office of representative in Congress shall be a resident and qualified elector of the district in which he seeks office."

It is admitted that Wilfredo Sedillo, candidate for representative in Congress from District 2, resides and is a registered elector in District 1, and that William Higgs is not and will not, at the time of the election, be a qualified elector within the State of New Mexico.

The petitioners argue that art. I, § 2, clause 2, of the United States Constitution prescribes the qualifications for representatives in Congress; that the New Mexico statute, supra, purports to add additional qualifications for a representative in Congress and is unconstitutional. Art. I, § 2, clause 2, reads:

"No person shall be a Representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

▪ The constitutional qualifications for membership in the lower house of Congress exclude all other qualifications, and state law can neither add to nor subtract from them. In re O'Connor, 173 Misc. 419, 17 N.Y.S.2d 758 (1940); State ex rel. Eaton v. Schmahl, 140 Minn. 219, 167 N.W. 481 (1918); State ex rel. Chandler v. Howell, 104 Wash. 99, 175 P. 569 (1918); Ekwall v. Stadelman, 146 Or. 439, 30 P.2d 1037 (1934); Stockton v. McFarland, 56 Ariz. 138, 106 P.2d 328 (1940). The state may provide such qualifications and restrictions as it may deem proper for offices created by the state; but for offices created by the United States Constitution, we must look to the creating authority for all qualifications and restrictions.

▪ Clearly, § 3–18–3, supra, by requiring that each candidate for representative in Congress be a resident of and a qualified elector of the district in which he seeks office, adds additional qualifications to becoming a candidate for that office. Accordingly, we must hold the provisions of the Federal Constitution prevail and that this statute unconstitutionally adds additional qualifications.

▪ Although it is admitted that petitioner Higgs came to New Mexico only recently and for a particular purpose, he has filed herein his affidavit wherein he states that he has all the constitutional qualifications for the office that he seeks and "is now an inhabitant of and residing in the State of New Mexico, and that he intends to be an inhabitant of and reside in the State of New Mexico on November 5, 1968, and thereafter." However, the question of whether or not, under the circumstances recited, he can be described as a "sojourner" so as to disqualify him from holding the office, if elected, is not for us to decide. We understand the law to be as stated in 107 A.L.R. 205, 206, that:

"Article I, § 5, of the Constitution of the United States, relating to the powers of Congress, provides that 'each house shall be the judge of the elections, returns, and qualifications of its own members.'

"It is well settled that this provision constitutes each house of Congress the sole and exclusive judge of the election and qualifications of its own members and deprives the courts of jurisdiction to determine those matters."

See, also, State ex rel. Wettengel v. Zimmerman, 249 Wis. 237, 24 N.W.2d 504 (1946), and Laxalt v. Cannon, 80 Nev. 588, 397 P.2d 466 (1964).

It thus follows that both petitioners, Sedillo and Higgs, should have been certified as provided in § 3-3-2, supra.

Petitioners Tijerina and Maestas are candidates for governor and lieutenant-governor of New Mexico. The questions involving them are entirely distinct, so will be discussed separately.

■■ Tijerina was not certified because he had been convicted of a felony in the United States District Court for the District of New Mexico. Several arguments are made as to why the refusal to certify was contrary to law. The first of these is the contention that the New Mexico Constitution does not prohibit one convicted of a felony from being a candidate for governor. Petitioner relies on art. V, § 3, urging that the qualifications therein set out are the sum and total of all of the qualifications required of a candidate for governor. That section, insofar as pertinent, is as follows:

"No person shall be eligible to any office specified in section one, hereof [which includes the governor], unless he be a citizen of the United States, at least thirty years of age, nor unless he shall have resided continuously in New Mexico for five years next preceding his election; * * *."

In making this argument, petitioner claims that art. VII, § 2, par. A, does not provide for any additional qualifications for the office of governor other than those set out in art. V, § 3, supra. This latter provision reads as follows:

"Sec. 2.

"A. Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this Constitution."

the argument being that the clause "except as otherwise provided" means that the constitution makers intended to have the governor meet the qualifications in art. V, § 3, only. With this we disagree. The constitution must be construed as a whole, and we hold that the two sections should be read together, Trounstine v. Britt, 212 N.Y. 421, 106 N.E. 129 (1914); In re Board of Rapid Transit Com'rs, 147 N.Y. 260, 41 N.E. 575 (1895); Williams Co. v. Superior Court etc., 97 Cal.App. 422, 275 P. 838 (1929); thereby requiring that a person in order to hold the office of governor be a citizen of the United States at least thirty years of age, who has been a resident continuously for five years preceding his election, and who is a qualified elector in New Mexico. Any other construction of the two sections would be strained, and to follow petitioner's argument to its logical conclusion would be to make art. V, § 3, supra, a super-qualification provision, not contemplated by the constitution makers, which would allow an individual to be a candidate even though such candidacy violated another section of the constitution, such as for example, the two-consecutive-terms provision of art. V, § 1.

Having determined that the constitution requires that one must be a qualified elector in this State to hold the office of governor, we must look to art. VII, § 1, New Mexico Constitution, to determine the qualifications a person must meet to be an elector. That section, insofar as material, reads:

"Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons, persons convicted of a felonious or infamous crime unless restored to political rights, and Indians not taxed, shall be qualified

to vote at all elections for public officers. * * *"

It is here asserted that petitioner Tijerina was denied certification by respondent because he has been convicted of a felony (forcibly assaulting, intimidating and interfering with an officer of the Forest Service, U.S. Department of Agriculture, while said officer was engaged in the performance of his official duties in violation of 18 U.S.C. § 111 and 18 U.S.C. § 2) in the United States District Court for the District of New Mexico.

We are then faced with the problem of whether this conviction in the United States District Court makes this petitioner a person "convicted of a felonious or infamous crime" within the meaning of art. VII, § 1, New Mexico Constitution. Although we recognize that the authorities are in no sense unanimous, we are convinced that the vast majority of the better-reasoned opinions are to the effect that the conviction of a felony in a foreign jurisdiction, such as the federal court in this instance, should be considered by the courts of another state as being the conviction of a felony within the constitutional prohibition. State ex rel. Olson v. Langer, 65 N.Dak. 68, 256 N.W. 377 (1934); State ex rel. Barrett v. Sartorious, 351 Mo. 1237, 175 S.W.2d 787, 149 A.L.R. 1067 (1943); and Bruno v. Murdock, 406 S.W.2d 294, 297 (Mo.1966), are illustrative of the majority rule. This is so even in cases such as the instant one, where, although the charge in the federal court is a felony, it is urged that, under similar circumstances, the charge in New Mexico would be a misdemeanor. In order to expedite, we will not here cite the many cases which are well annotated in 175 A.L.R. 784. In this connection, we do not determine that the federal charge would have been a misdemeanor in New Mexico, for the very simple reason that it involved an assault upon a federal officer and it is to be doubted if our laws contemplate such a charge.

Although petitioner cites cases from other jurisdictions holding to the contrary, it is our considered judgment that the conviction of a felony in some other jurisdiction has the effect of casting a shadow on the individual involved and must be considered as within the constitutional prohibition denying the right of suffrage and the right to hold office to such a person. Again, we rely on annotations because of the necessity of disposing of this case with dispatch. See, Annots., 149 A.L.R. 1075 and 71 A.L.R.2d 593.

We are then brought to the question of what effect, if any, the taking of an appeal has in the federal case. Following petitioner's conviction and sentence in the United States District Court, he appealed to the Tenth Circuit, and the case has not been disposed of as yet. Here, again, the authorities seem to be somewhat divided as to whether a conviction is to be considered as such pending final determination by a court of last resort. Although it is not precisely in point because it involved removal rather than a candidacy, State v. Langer, supra, holds that the conviction in the trial court was determinative of the South Dakota constitutional "conviction" provision. Many other cases support such a ruling, and we agree. Annot., 71 A.L.R.2d 593 § 6. In fairness, we would note, as urged by petitioner, that State ex rel. Heartsill v. County Election Board, 326 P.2d 782 (Okla.1958), seems to be in variance with the view we here take. However, the Oklahoma case is distinguishable on its facts in that the individual involved there, although having been convicted in the federal court, had, in effect, been acquitted by a state-court jury which refused to remove him from office.

Lastly, in connection with this petitioner's claim, it is urged that the federal conviction is void and therefore can be collaterally attacked in this proceeding. Even though there seems to be authority as urged by the petitioner, we cannot but feel that it would be incongruous for this court to even consider the question when, in the last analysis, the decision must be that of the United States Circuit Court or the United States Supreme Court. Our decision on this point

could have no effect on the Circuit Court's decision, and could in no sense determine whether the conviction was or was not valid. We decline to take any action insofar as this argument is concerned. It therefore follows that the writ insofar as petitioner Tijerina is concerned must be set aside as improvidently issued.

In view of our determination as to the candidate for governor, how, then, does this affect the candidate for lieutenant-governor? Under art. V, § 1, of the State Constitution, it is provided that the governor and lieutenant-governor are elected jointly by casting a single vote for both offices. The People's Constitutional Party is then in the position of having no candidate for governor but having one who is apparently qualified as a candidate for lieutenant-governor. The only reason for the refusal to certify the lieutenant-governor candidate, petitioner Maestas, was because the party, after the disqualification of Tijerina, had no candidate for governor.

■ We believe it was the intention of the people of the State, in amending §§ 1 and 2 of art. V, to require that the governor and lieutenant-governor be voted on as a unit. Lacking one of them, namely, the governor, there can be no candidate for lieutenant-governor by himself, and mandamus does not lie to compel the certification of his name.

Petitioner Preston Monongye has been refused certification as a candidate for the office of district attorney for the First Judicial District by the respondent for the announced reason that he is not learned in the law as required by the New Mexico Constitution for one to hold that office.

Art. VI, § 24, reads as follows:

"There shall be a district attorney for each judicial district, *who shall be learned in the law,* and who shall have been a resident of New Mexico for three years next prior to his election, shall be the law officer of the state and of the counties within his district, shall be elected for a term of four years, and shall perform such duties and receive such salary

as may be prescribed by law. * * *" (Emphasis added.)

Thus we are brought directly to the question of what is meant by "learned in the law." Our problem is complicated by the fact that art. VI, § 8, provides, among other things, that to be qualified to hold the office of justice of the Supreme Court a person must be "learned in the law, and shall have been in the actual practice of law * * * for at least three years." In art. V, § 3, it is provided, among other things, that to be eligible to hold the office of attorney general a person must "be a licensed attorney of the Supreme Court of New Mexico in good standing."

By affidavit the petitioner sets forth his qualifications which do not include completion of a law course or graduation from an approved law school. Neither does he claim that he has been admitted or is qualified to be admitted to practice law in this or any other state. Under these circumstances, can he be "learned in the law"?

We would answer unhesitatingly in the negative were it not for the different qualifications contained in our constitution, as noted above, for holding the offices of district attorney, attorney general and justice of the Supreme Court.

It would seem self-evident that admission to practice law before the highest courts of a state would amount to a determination, prima facie at least, that an individual is learned in the law, and that in the absence of such admission, a person is presumptively not learned in the law. See Opinion of the Justices, 279 Ala. 38, 181 So.2d 105 (1965); Jamieson v. Wiggin, 12 S.D. 16, 80 N.W. 137, 76 Am.St.Rep. 585; 50 A.L.R. 1156 (1899); State ex rel. Jack v. Schmahl, 125 Minn. 533, 147 N.W. 425 (1914). Compare, Heard v. Moore, 154 Tenn. 566, 290 S.W. 15, 50 A.L.R. 1152 (1926). For other cases, see Annot., 50 A.L.R. 1156. Indeed, the decisions just cited generally hold the requirements to be that the right to practice law in the state where the candidate seeks an office wherein being "learned in the law" is a qualification, must have been

determined before the election by admission to practice by the proper authority. See Jamieson v. Wiggin, supra. Since petitioner here neither asserts his right to be admitted to practice here or elsewhere, now or at any time in the future, we do not perceive that we need express an opinion on the question of when, where and by whom the admission must be performed.

■ What about the different language concerning the qualifications for the several offices noted above? We are extremely conscious that in considering this question we are limited to determining the intention of those who adopted the document, and where the spirit and intent is clearly ascertainable as contrary to the strict letter of the language and literal application would lead to an incongruous result, it should not be permitted to control. See, Board of County Com'rs of Bernalillo County v. McCulloh, 52 N.M. 210, 195 P.2d 1005 (1948); State ex rel. Ward v. Romero, 17 N.M. 88, 125 P. 617 (1912). We have held that it is the duty of this court to search out and declare the true meaning and intent of any constitutional amendment adopted by the people. Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946). Certainly, our duty is no different in considering the constitution itself. Tintic Standard Mining Co. v. Utah County, 80 Utah 491, 15 P.2d 633 (1932).

When we apply these pronouncements to our present problem we are brought directly and certainly to the conclusion that "learned in the law" is an expression well known and understood when the constitution was drafted. See Danforth v. Egan, 23 S.D. 43, 119 N.W. 1021, 139 Am.St.Rep. 1030, 20 Ann.Cas. 418 (1909); Jamieson v. Wiggin, supra, decided before our constitution was adopted. As there interpreted, the meaning was the same as "licensed attorney," the term used in art. V, § 3, supra. Also, we note that "actual practice of the law" is required in art. VI, § 8, supra, in connection with qualifications for the Supreme Court. At the date of the adoption of our constitution, Ch. 53, § 26, N.M.S.L. 1909, reading as follows, was in effect:

"No person can practice in any of the courts of this Territory except probate courts and courts of justices of the peace, nor can any person commence, conduct or defend any action or proceeding in any of said courts unless he shall first have obtained a temporary license as herein provided, or shall have been granted a certificate of admission to the bar under the provisions of this act, and any person violating the provisions of this section is guilty of contempt of court."

■ It is thus manifest that one "learned in the law" who had "been in the actual practice of law" in this state, required that for a person to qualify for the Supreme Court, he must have been admitted to practice just as certainly as the Attorney General, who is specifically required to be a "licensed attorney." How does the situation differ where no actual practice is specified in addition to being "learned in the law," as is provided in art. VI, § 24, supra, for the office of district attorney? It is our considered judgment that admission to practice, or qualification to be admitted is no less a requirement than is true of supreme court justices. The only difference is that district attorneys need not have had the actual practice required in art. VI, § 8, supra. To our minds, to hold that "learned in the law" and being a "licensed attorney" are synonymous is indicated and reasonable, whereas it is awkward and unreasonable, and was no less so when the constitution was ratified, to conclude that one found qualified and licensed could be attorney general, while no need is present to show admission to practice for one to qualify for district attorney.

We would add one additional word. The duties of district attorney are found in § 17–1–11, N.M.S.A.1953, in a form practically unchanged since adopted in 1909. See Ch. 22, § 2, N.M.S.L.1909. Appearance in courts is required in the very

first paragraph. As already noted, admission to practice is, and since at least 1909 has been, a prerequisite to practice in court. It follows that in the light of the statute and the surrounding circumstances present when our constitution was adopted, an interpretation such as that argued for by petitioner Monongye is unreasonable and incongruous and will not be adopted by us.

It follows that the alternative writ heretofore issued in connection with petitioner Monongye should be quashed.

■ Petitioner Anderson was not certified because it was claimed he was not a registered voter of the party concerned. We find no requirement that candidates nominated by a political party, not required to be nominated at the primary election, be registered electors of such minority party. Sec. 3–11–11, N.M.S.A.1953, expressly provides that the requirements of ch. 317, Laws of 1963, shall apply only to political parties for whose candidates there were cast as many as 15% of the total votes for governor at the preceding general election. The People's Constitutional Party had no candidates at that election. It follows then that there is no requirement that Roger Anderson, candidate for State Board of Education, second judicial district, be a registered elector of said party for one year prior to the issuance of the election proclamation by the Governor, and this petitioner should have been certified.

From what we have said, the writ of mandamus will be made permanent as to all the petitioners, except Reies Lopez Tijerina, Jose Alfredo Maestas, and Preston Monongye, as to whom the alternative writ will be quashed as improvidently issued. The respondent will be directed to forthwith certify for the People's Constitutional Party, to the various county clerks, the following: Ventura Chavez, candidate for President of the United States; Adelicio Moya, candidate for Vice-President of the United States; Wilfredo Ernest Sedillo, candidate for Representative in Congress, Second District; William Higgs, candidate for Representative in Congress, First District; and Roger Anderson, candidate for State Board of Education, Second Judicial District; all of which shall be done in order that the names of the above persons shall be included on the general election ballot and on the voting machines for the general election to be held on November 5, 1968.

No motion for rehearing will be entertained.

It is so ordered.